

# SUPREME COURT OF MISSOURI
## en banc

EARTH ISLAND INSTITUTE, d/b/a )
RENEW MISSOURI, )
                                 )
      **Appellant** )
                                 )
MISSOURI COALITION FOR )
THE ENVIRONMENT, et al., )
                                 )
      **Complainants,** )
                                 )
**vs.** )      **No. SC93944**
                                 )
UNION ELECTRIC COMPANY, d/b/a )
AMEREN MISSOURI, )
                                 )
      **Respondent,** )
                                 )
AND PUBLIC SERVICE COMMISSION )
OF THE STATE OF MISSOURI, )
                                 )
      **Respondent.** )

## APPEAL FROM THE MISSOURI PUBLIC SERVICE COMMISSION

### *Opinion issued February 10, 2015*

Earth Island Institute, doing business as Renew Missouri, and additional parties (collectively "Renew Missouri") appeal the Public Service Commission's determination that section 393.1050,[1] a statute exempting electric utilities that met a certain renewable energy target on a certain date from any solar energy requirements, was not invalidated by the subsequent passage of a ballot initiative ("Proposition C") that imposed solar

---

[1] All statutory references are to RSMo Supp. 2008, unless otherwise indicated.

energy requirements on "all electric utilities." The Commission found that the two provisions could be harmonized by considering section 393.1050 a specific exemption to the general provisions of the later-adopted initiative, particularly in light of section 393.1050's use of the phrase "notwithstanding any other provision of law."

This Court disagrees. Contrary to the Commission's order, there is a conflict between section 393.1050 and Proposition C as to solar energy requirements. A statute cannot, merely by inclusion of the phrase "notwithstanding any other provision of law" in legislation adopted after an initiative is approved for circulation, preclude the people by initiative from adopting a law in conflict with the statute. While it is the case that the failure of a subsequent legislature to delete the phrase "notwithstanding any other provision of law" from the earlier legislation may mean that the subsequent legislature intended the more specific earlier statute to remain effective, this reasoning cannot apply here, where the statute was adopted after the wording of the initiative had been finalized and approved for circulation, but prior to its passage at the general election. The legislature could not preemptively negate the effect of the initiative before it had even been voted on by the people and make the people's later vote a meaningless act as to the subject of the statute. This would infringe on the constitutionally protected initiative rights of the people.

But this Court agrees that these principles do not preclude the legislature from enacting a law in an area that already is the subject of an approved, but not yet passed, initiative. To hold otherwise would allow the mere repetitive filing of an initiative petition to forestall legislation in that subject area from ever becoming law, even if the

people repeatedly rejected the initiative. This would unduly and unnecessarily interfere with the ability of the legislature to carry out its intended duties. Similarly, the passage of an initiative does not preclude the legislature from later enacting contrary laws that have the effect of limiting or repealing the statute adopted by initiative petition.

But neither of these situations is presented here; the only issue is whether the legislature may negate in advance an initiative petition that has been approved for circulation but prior to the time it is adopted by the people at an election. It may not. If a proposed initiative is adopted by the people at an election, then a statute enacted by the legislature during the interim between the initiative's approval for circulation and its passage is impliedly repealed to the extent of any conflict between the two measures. Here, the people by their votes adopted Proposition C as law in November 2008. Because section 393.1050 in its entirety is in conflict with Proposition C, and because an initiative is effective on the date of its adoption, section 393.1050 was repealed by implication upon adoption of Proposition C on November 4, 2008.

## I.    *FACTUAL AND PROCEDURAL HISTORY*

On February 4, 2008, the Secretary of State approved for circulation a ballot initiative petition, subsequently designated Proposition C, which proposed a statutory "Renewable Energy Standard" for utility companies operating in Missouri. The official ballot title was certified on February 25, 2008. The Secretary issued a receipt on May 4, 2008, acknowledging delivery of a number of signatures later determined to be sufficient

3

to qualify the proposition for the ballot.[2]

Proposition C, generally, proposed a statutory scheme under which electric utilities would be required to provide progressively higher percentages of their electricity sales from renewable energy resources − including wind, crops grown for energy, and hydropower, among others – in certain calendar years. *§ 393.1030.1, RSMo Supp. 2009*; *§ 393.1025(5), RSMo Supp. 2009*. As relevant here, Proposition C included two specific provisions concerning solar energy, codified in section 393.1030, RSMo Supp. 2009. Section 393.1030.1 imposed a "solar carve out" described as "a portfolio requirement for all electric utilities to generate or purchase electricity generated from renewable energy resources" of which "[a]t least two percent of each portfolio requirement shall be derived from solar energy." Section 393.1030.3 mandated a solar rebate, by which "[e]ach electric utility shall make available to its retail customers a standard rebate offer … for new or expanded solar electric systems sited on customers' premises …."[3]

In May 2008, after Proposition C was certified for placement on the 2008 general election ballot, but before it could be voted on in November 2008, the General Assembly passed Senate Bill No. 1181, codified as section 393.1050. SB 1181 stated that "notwithstanding any other provision of law" an electrical corporation is exempt from any solar carve out or solar rebate requirements if the company "achieves an amount of eligible renewable energy … capacity equal to or greater than fifteen percent of such

[2] Proponents circulated five different versions of the Renewable Energy Standard, but only one was certified for the November 2008 ballot.

[3] The legislature amended this subsection in 2013 to phase out the mandatory rebate for solar electric systems becoming operational after June 30, 2020. *H.B. 142, 97th Gen. Assemb., 1st Reg. Sess. (Mo. 2013)*.

corporation's total owned fossil-fired generating capacity" by January 20, 2009. Section 393.1050 became effective August 28, 2008. At the November 4, 2008, general election, voters approved Proposition C, and it became effective immediately upon passage.[4] *Mo. Const. art. III, § 51.*

Empire District Electric Company was the only electric utility that claimed eligibility for the solar carve out or rebate exemption set out in section 393.1050. Renew Missouri thereafter filed a complaint with the Commission against Empire.[5] Renew Missouri asserted that Empire could not claim the section 393.1050 exemption because section 393.1050 was invalid[6] in that: (1) the legislature lacked authority to enact legislation amending Proposition C while it was pending but before it had been voted on;

---

[4] Pursuant to statutory provisions enacted under Proposition C, the Commission prescribed by regulation the energy portfolio required of electric utilities, including the solar energy requirements. The rules promulgated by the Commission became effective on September 30, 2010, and appear at 4 CSR 240-20.100.

[5] Although Renew Missouri also filed a complaint with the Commission against Union Electric Company, doing business as Ameren Missouri, Renew Missouri does not seek review of the portion of the Commission's order dismissing the complaint against Ameren. Only the portion of the order concerning Empire is at issue. For convenience, both respondents on appeal, Empire and the Commission, will be referred to collectively as "Empire."

[6] A separate set of plaintiffs originally challenged section 393.1050 through a declaratory judgment action in the Cole County circuit court. The trial court dismissed the suit, and the court of appeals affirmed, holding that the Commission had "primary statutory authority over the cause." *Evans v. Empire Dist. Elec. Co., 346 S.W.3d 313, 319 (Mo. App. 2011).* Pursuant to section 386.390.1, individuals may file complaints with the Commission "setting forth any act or thing done or omitted to be done by any corporation, person or public utility … in violation, or claimed to be in violation, of any provision of law."

In finding that the Commission had "primary statutory authority" in this case, *Evans* recognized that the Commission "has no authority to declare a statute invalid" but held that the Commission does have "the power to determine if the provisions of Proposition C are in irreconcilable conflict or can in fact be harmonized with the provisions of section 393.1050." *346 S.W.3d at 318, 319.*

(2) section 393.1050 irreconcilably conflicts with Proposition C and, as the later enacted law, Proposition C repealed section 393.1050 by implication; and (3) there is no rational basis for exempting Empire but no other electrical corporations from the solar requirement such that section 393.1050 constitutes a special law in violation of article III, section 40 of the Missouri Constitution.

The Commission determined: (1) the pendency of Proposition C did not prevent the legislature from passing related legislation; (2) Proposition C did not impliedly repeal section 393.1050 because the two laws could be harmonized; and (3) section 393.1050 is not a special law. Renew Missouri appeals.

This Court affirms the holding that the legislature had the authority to adopt section 393.1050 but reverses the Commission's holding that the two laws could be harmonized. Section 393.1050 was impliedly repealed by the adoption of Proposition C because it conflicted with the latter law. Because of this resolution of the first two issues, the third, special law, claim has become moot and is not further addressed.

## II.    STANDARD OF REVIEW

This Court has exclusive appellate jurisdiction over challenges to the validity of a state statute.[7]  *Mo. Const. art. V, § 3.*  Questions of law, including constitutional

---

[7]  Empire argues that, because the issue here is the lawfulness of the Commission's order, not the validity of the statute, jurisdiction is properly vested in the court of appeals, noting that section 386.510, RSMo Supp. 2013, governing review of Commission orders, states "the commission shall forward [the notice of appeal] to the appellate court with the territorial jurisdiction over the county where the hearing was held or in which the commission has its principal office for the purpose of having the reasonableness or lawfulness of the original order … inquired into or determined."

6

challenges to a statute, are reviewed de novo. *Rentschler v. Nixon, 311 S.W.3d 783, 786 (Mo. banc 2010).*

Pursuant to section 386.510, RSMo Supp. 2013, when reviewing an order issued by the Commission: "[F]irst, the reviewing court must determine whether the [Commission]'s order is lawful; and second, the court must determine whether the order is reasonable." *Office of Pub. Counsel v. Missouri Pub. Serv. Comm'n, 409 S.W.3d 371, 375 (Mo. banc 2013) (quoting State ex rel. AG Processing, Inc. v. Pub. Serv. Comm'n, 120 S.W.3d 732, 734 (Mo. banc 2003)).* The appellant bears the burden of proving that the order is unlawful or unreasonable. *Office of Pub. Counsel, 409 S.W.3d at 375.* Legal questions are reviewed de novo, and the Court determines the lawfulness of an order "by whether statutory authority for its issuance exists." *Id. (quoting AG Processing, 120 S.W.3d at 734).*

The reasonableness of an order is assessed based on whether it "is supported by substantial, competent evidence on the whole record; the decision is not arbitrary or capricious or where the [Commission] has not abused its discretion." *Office of Pub. Counsel, 409 S.W.3d at 375* (internal citation omitted).

---

But, as it did before the Commission, Renew Missouri also challenges the constitutional validity of section 393.1050 on the ground that it is a special law in violation of article III, section 40 of the Missouri Constitution. "When a real and substantial constitutional question is raised, this Court has jurisdiction to determine it." *Mayes v. Saint Luke's Hosp. of Kansas City, 430 S.W.3d 260, 270 (Mo. banc 2014).* Due to its resolution of the first two issues, however, this Court does not reach the unconstitutional special law claim: "Once the case properly invokes this Court's jurisdiction, the ultimate determination that the constitutional issue is not meritorious or that the merits of the constitutional issue should not be addressed does not retroactively deprive this Court of jurisdiction." *Id.*

### III. PROPOSITION C REPEALED SECTION 393.1050 BY IMPLICATION

Proposition C directs the Commission to "prescribe by rule a portfolio requirement for *all electric utilities* to generate or purchase electricity generated from renewable energy resources." *§ 393.1030.1, RSMo Supp. 2009* (emphasis added). It further states that "[a]t least two percent of each portfolio requirement shall be derived from solar energy." *Id.* In other words, the initiative requires *all* electric companies, without exception, to satisfy the 2-percent solar carve out.[8]

By contrast, the legislatively adopted section 393.1050 states, in relevant part:

> Notwithstanding any other provision of law, any electrical corporation as defined by subdivision 15 of section 386.020 which, by January 20, 2009, achieves an amount of eligible renewable energy technology nameplate capacity equal to or greater than fifteen percent of such corporation's total owned fossil-fired generating capacity, *shall be exempt thereafter from a requirement to pay any installation subsidy, fee, or rebate to its customers that install their own solar electric energy system and shall be exempt from meeting any mandated solar renewable energy standard requirements.*

(Emphasis added.) Section 393.1050 thereby states that, notwithstanding any other provision of law, electric companies that provided 15 percent of their electric utility's sales from renewable energy sources by January 20, 2009, are exempt from any mandated solar renewable energy standard requirements.

#### A. Proposition C and Section 393.1050 Conflict Despite the Inclusion of a "Notwithstanding Any Other Provision of Law" Clause in the Statute

The first question before the Court is whether the two provisions at issue are in irreconcilable conflict. *State ex rel. City of Jennings v. Riley, 236 S.W.3d 630, 631 (Mo.*

---

[8] The Commission's order in this case confirms this finding: "The terms of Proposition C … do not exempt any electric utility from the solar energy requirements of that statute."

*banc 2007)* (identifying conflict between two statutes as "a precondition to the application of the principles of statutory construction"). When "two statutory provisions covering the same subject matter are unambiguous standing separately but are in conflict when examined together, a reviewing court must attempt to harmonize them and give them both effect." *South Metro. Fire Prot. Dist. v. City of Lee's Summit, 278 S.W.3d 659, 666 (Mo. banc 2009).*

Empire argues that, because section 393.1050 is the more specific statute, in that it provides an exemption from the solar carve out and rebate requirements for certain electric utilities, it preempts those portions of the subsequently enacted Proposition C that would require Empire to meet those solar energy requirements. For this proposition, Empire relies on the well-established principle that "[w]here there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." *Morton v. Mancari, 417 U.S. 535, 550-51 (1974).* The general/specific canon, however, "is not an absolute rule, but is merely a strong indication of statutory meaning that can be overcome by textual indications that point in the other direction." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank, 132 S. Ct. 2065, 2072 (2012).*

Empire argues that the intention for the more specific to prevail over even a later enacted general law is demonstrated by the inclusion in section 393.1050 of the words, "notwithstanding any other provision of law." Empire says that this demonstrates the legislature's intent that the exemption it enacted in section 393.1050 during the interim period between the certification of Proposition C and its adoption by the people should

9

negate the effect of Proposition C to the extent that the two conflict.

Empire is correct that, were this Court construing two legislatively adopted statutes to see which prevailed when their terms were inconsistent, the prefatory "notwithstanding any other provision of law" language in section 393.1050 would eliminate any potential conflict with the competing statute. As noted in *Riley,* "to say that a statute applies 'notwithstanding any other provision of the law' is to say that no other provisions of law can be held in conflict with it. … the 'Notwithstanding' clause does not create a conflict, but eliminates the conflict that would have occurred in the absence of the clause." *236 S.W.3d at 632*.

When two already adopted statutes are at issue, this rule of construction applies. In such a case, if the later-adopted statute contains the "notwithstanding any other provision of law" language, it clearly indicates an intent for that later-adopted statute to prevail to the extent that the two statutes are inconsistent. If the earlier-adopted statute contains the "notwithstanding any other provision of law" language, the legislature's decision to leave that language in place rather than repealing it at the time of the adoption of the later, partially inconsistent statute also indicates an intent that the earlier statute is to continue to be given effect to the extent that the two are inconsistent.

Here, the issue before the Court is not how to construe two already adopted statutes, but how to construe a statute adopted by the legislature after the approval for circulation of an initiative with which it is inconsistent, but prior to the time that the people have voted to adopt that initiative. In other words, the issue is whether the legislature, by use of such "notwithstanding any other provision of law" language, has the

authority to negate or repeal *in advance of its adoption* that portion of an initiative with which it is inconsistent and that is later adopted by the people. This Court answers in the negative and, in so doing, determines that section 393.1050 cannot be harmonized with Proposition C for the reasons that follow.

**B.** ***The Legislature May Not Repeal an Initiative in Whole or in Part in Advance of its Passage***

"Every [initiative] petition shall be filed with the secretary of state not less than six months before the election and shall contain an enacting clause and the full text of the measure." *Mo. Const. art. III, § 50.* "Each page of an initiative petition shall be attached to or shall contain a full and correct text of the proposed measure." *§ 116.050.1, RSMo 2000.* In this case, the Secretary of State on February 4, 2008, approved for circulation the initiative petition that ultimately became Proposition C. The legislature did not pass section 393.1050 until May 16, 2008. By that point, the language of the initiative was set.

If section 393.1050 were to be permitted to preemptively modify the initiative under these circumstances, then it would allow the legislature to undercut or undo a law initiated by the people before it could ever be voted on merely by passing a related statute with more specific terms or containing the clause "notwithstanding any other provision of law." Here, it would mean that, even though the initiative process had been properly followed, by the time that the voters enacted Proposition C, some of its provisions would never become law due to a statute passed by the legislature months earlier.

Such unilateral, preemptive action by the legislature serves as an end run around

11

the constitutionally protected right of the people of Missouri to enact legislation by ballot initiative. *Mo. Const. art. III, § 49* ("The people reserve power to propose and enact … laws and amendments to the constitution by the initiative, independent of the general assembly"). It is also misleading to the voters who would have been unaware that the unqualified solar mandate they were voting to approve had, in fact, been partially preemptively repealed before they had the opportunity to cast their votes. To the extent that a statute, enacted after an initiative is approved for circulation but prior to its passage, limits the effect of the later-adopted initiative, the statute is impliedly repealed.

This Court previously rejected a similar attempt to negate in advance the effect of a *referendum* ordered by the people[9] in *State ex rel. Drain v. Becker, 240 S.W. 229 (Mo. banc 1922)*. There, while the proposed referendum was pending but before it had been voted on by the people, the legislature purported to repeal the legislation that was the subject of the referendum and to enact a new statute that retained the essential terms of the former legislation. *Id. at 230.* It then argued that this new statute could take effect, regardless of what the people voted on the matter referred, because it was later adopted and was not itself subject to the referendum.

This Court properly rejected this attempt at an end run around the referendum. It held that, once the right of referendum has been invoked, the legislature "is divested of all power in regard to the matter referred until the action of the people has been exercised by a vote upon same." *Id. at 232.* To hold otherwise, the Court said, would allow the

---

[9] "A referendum may be ordered … either by petitions signed by five percent of the legal voters in each of two-thirds of the congressional districts in the state, or by the general assembly, as other bills are enacted." *Mo. Const. art. III, § 52(a)*.

legislature "to ignore or to attempt to hold for naught the action of the people in referring the measure." *Id.*

Although *Drain* is distinguishable from the instant case both in its procedural posture before the Court and in the distinctions between the purpose and process of a referendum and an initiative, its holding that preemptive legislation cannot negate a constitutional right of the people is determinative. Indeed, *Drain* discussed this concern in the context of both the initiative and referendum processes:

> Precedents are cited to give color of authority to the action of the General Assembly in the attempted adoption of a measure of like tenor and application to the one referred while the latter was in process of reference. These rulings will be found limited to the amendment or repeal by the Legislature of [already] initiated or referred acts, and not to those *in process of initiation or reference*. … When, therefore, it is said that the power of the Legislature has been generally sustained to repeal or modify initiative or referendum legislation, *only enacted legislation is meant and not that in process of enactment*.

*Id.* (emphasis added).

In other words, *Drain* said that once a statute is adopted by initiative or referendum, then the legislature is free to amend or repeal it as it would any other statute. *Id.* But the legislature may not preempt the effect of a later-adopted referendum or initiative while it is still pending before the voters by enacting legislation inconsistent with the measure during that interim period. *Id.*

The Court reaffirms this reasoning here. The legislature could not preempt the effect of all or part of Proposition C so that, even when adopted by the people, some of its provisions never would take effect. Rather, like in *Drain,* this Court reaffirms that, while the legislature may amend or repeal a statute adopted by initiative or referendum after it

13

has been adopted, it may not validly do so once the measure is approved for circulation and prior to its passage.

The dissent, while for the most part reiterating the facts and law already set out in this opinion, then posits that the majority's holding improperly gives special treatment to statutes adopted by initiative by treating them differently than statutes adopted by the legislative process. That is not the case. Once statutes are adopted, whether by initiative or by legislative action, they are both identically subject to repeal or amendment.

But the process of adoption of statutes by initiative is, in fact, different from the process of adoption of statutes by the legislature. In the case of two statutes proposed for enactment by the legislature, the legislature can consider either or both, and in the event of conflict if both are adopted, rules of statutory construction can assist in interpreting the legislature's meaning in adopting both.

In the case of a statute and an initiative, two different adopting bodies are involved, and a determination of legislative intent does not determine the people's intent in adopting an initiative. Further, unlike the case with a legislatively adopted statute, the initiative process by its nature takes a six-month or longer period of time as the petition is approved, signatures obtained, and an election held. Recognition of and respect for this separate and lengthy process, a process the people reserved for themselves in Missouri's constitution, is what is reflected in this Court's holding here and in *Drain*: the legislature cannot render meaningless the people's right to adopt a law by initiative by negating that law through legislative adoption of a statute after the initiative petition is proposed for circulation but before the people have had an opportunity to adopt it.

14

But this Court also affirms the Commission's determination that the legislature may act "on other, related aspects of an issue that are subject to a pending initiative so long as it does not interfere with the pending initiative." To the extent that *Drain* can be read to hold that the legislature is precluded from enacting *any* legislation related to a pending ballot initiative, it is overruled. Otherwise, persons or groups who wish to prevent the legislature from adopting certain policies could preclude legislation on those issues indefinitely by the simple expedient of again and again proposing inconsistent initiatives that are again and again defeated at the ballot box. This could prevent the legislature from fulfilling its legislative duties. Further, it is inconsistent with this Court's long recognition that, once a statutory initiative proposition has been adopted, the legislature has the right thereafter to amend the statute so adopted, just as it can amend any other statute adopted through the usual legislative process. *See, e.g., Harris v. Missouri Gaming Comm'n, 869 S.W.2d 58, 61 (Mo. banc 1994)* ("The power to repeal or modify a referendum law is within the power of the legislature").

Moreover, preclusion of any legislation on an issue that is the subject of an initiative petition is not necessary to effectuate the principles set out in *Drain* and reaffirmed here. An initiative can be inconsistent with an intervening statute only if the initiative is adopted by the people. If not adopted, then any intervening statute would continue in effect because it would not have been impliedly repealed by passage of the initiative.

As applied here, the inconsistency in the law arose on November 4, 2008, when the people voted to approve Proposition C. Proposition C became immediately effective.

15

*Mo. Const. art. III, § 51.*  At that point, the potential inconsistency of the two provisions became an actual inconsistency.  To the extent of that inconsistency, for the reasons already discussed, the conflict must be resolved by giving effect to the provision the people adopted by initiative.  Otherwise, to paraphrase *Drain,* the legislature could "ignore or [] attempt to hold for naught the action of the people in [initiating] the measure."  *Drain, 240 S.W. at 232.*  The adoption of Proposition C repealed section 393.1050 by implication, for "[w]hen two statutes are repugnant in any of their provisions, the later act, even without a specific repealing clause, operates to the extent of the repugnancy to repeal the first."  *Cnty. of Jefferson v. Quicktrip Corp., 912 S.W.2d 487, 490 (Mo. banc 1995)* (internal citation omitted).

## IV.    CONCLUSION

Having found the two statutes to be in conflict, Proposition C controls over the statute enacted between its approval for circulation and its passage.  Therefore, the prospective exemption created by section 393.1050 was repealed by the passage of Proposition C.  To the extent that it is inconsistent with this holding, the Public Service Commission's order is reversed.

_____

**LAURA DENVIR STITH, JUDGE**

Russell, C.J., Draper and Teitelman, JJ., and
Van Amburg, Sp.J., concur; Fischer, J., dissents
in separate opinion filed; Breckenridge, J.,
concurs in opinion of Fischer, J.  Wilson, J.,
not participating.

16



# SUPREME COURT OF MISSOURI
## en banc

EARTH ISLAND INSTITUTE, d/b/a )
RENEW MISOURI, )
 )
                  Appellant, )
 )
MISSOURI COALITION FOR )
THE ENVIRONMENT, et al., )
 )
            Complainants, )
 )
    v. )         No. SC93944
 )
UNION ELECTRIC COMPANY, d/b/a )
AMEREN MISSOURI, )
 )
            Respondent, )
 )
AND PUBLIC SERVICE COMMISSION )
OF THE STATE OF MISSOURI, )
 )
            Respondent. )

## DISSENTING OPINION

In my view, statutes enacted by the General Assembly are on equal footing with statutes passed by initiative petition; therefore, I respectfully dissent. The principal opinion rationalizes that a statute enacted by initiative petition pursuant to article III, section 49 of the Missouri Constitution should receive preferential rules of interpretation over a statute enacted by the General Assembly. There is no text in the Missouri Constitution or historical support that the original intent was for initiative legislation to

have special treatment above representative legislation.  In fact, article III, section 52(b) expressly provides that the initiative process, "shall not be construed to deprive any member of the [G]eneral [A]ssembly of the right to introduce any measure."  Well-settled principles of statutory interpretation require this Court to harmonize § 393.1030 with § 393.1050,[1] which both support the policy decision to encourage the use of renewable energy.  I would affirm the Public Service Commission's order, which applied this well-settled principle and determined that these statutes were not in conflict.[2]

## Factual and Procedural Background

The Secretary of State certified Proposition C for the November 4, 2008 ballot.  It became law when it passed by a majority vote on the day of the election.  *See* Mo. Const. art. III, § 51.  The relevant portion of Proposition C, codified at § 393.1030, has three parts.  First, it requires electric utilities to increase the percentage of electricity they generate or purchase from "renewable energy resources," on a progressive basis, reaching 15% of their sales in each calendar year beginning in the year 2021.  Section 393.1030.1. Second, at least 2% of that 15% must derive from solar energy—commonly referred to as the "solar carve out."  *Id.*  And third, it imposes an energy buy-back program on electric utilities, requiring them to give customers rebates for installing or expanding solar electric systems on their own property.  Section 393.1030.3.

---

[1] Statutory citations are to RSMo Supp. 2013.

[2] The principal opinion does not reach Renew Missouri's "special laws" challenge under article III, section 40 of the Missouri Constitution.  For that reason, I will not address it here, other than to state that the special laws provisions is not violated.

2

The General Assembly enacted S.B.1181, which was codified in § 393.1050 and became effective on August 28, 2008, after Proposition C was certified for the ballot but before the proposition became law. Section 393.1050 begins with the phrase "[n]otwithstanding any other provision of law." It then exempts any electrical corporation from any solar energy standard or rebate requirement for self-installed solar electric energy systems if, by January 20, 2009, the company's renewable energy capacity had reached 15% of its total owned fossil-fired generating capacity. Section 393.1050. There is no dispute Empire met these requirements.

Renew Missouri filed a complaint with the Public Service Commission against The Empire District Electric Company alleging it was not in compliance with § 393.1030; Empire claimed exemption from the solar carve out and rebate provisions under § 393.1050. Renew Missouri argued to the Commission that the adoption of § 393.1030 by initiative impliedly repealed the legislature's solar exemptions, set out in § 393.1050. The Commission, applying this Court's well-settled rules of interpretation, not surprisingly concluded that the two statutes were not in conflict and dismissed Renew Missouri's complaint. The principal opinion reverses the Commission and creates a special rule of statutory interpretation that just applies to initiative legislation in this particular factual scenario.[3] It holds, "The legislature could not preemptively negate the effect of the initiative before it had even been voted on by the people and make the

_____

[3] The principal opinion tacitly recognizes the General Assembly could reenact the provisions of §393.1050.

3

people's later vote a meaningless act as to the subject of the statute. This would infringe on the constitutionally protected initiative rights of the people." Slip op. at 2.

## Analysis

In my view, the Commission's order should be affirmed. The principal opinion assumes that § 393.1030 impliedly repealed § 393.1050 "to the extent of any conflict" yet concedes that "Empire is correct that were this Court construing two legislatively adopted statutes to see which prevailed where their terms were inconsistent, the prefatory 'notwithstanding any other provision of law' language in section 393.1050 would eliminate any potential conflict with the competing statute." Slip op. at 3, 10. The principal opinion claims that the constitution requires this Court to strike those words from the statute and find a conflict when none would otherwise exist. However, these statutes, as recognized by the Commission, serve a common rational policy to encourage renewable energy and are easily harmonized. Contrary to the principal opinion's holding, article III, sections 49 to 52 contemplate that no greater importance should be given to statutes passed by initiative than to statutes enacted by the General Assembly.

The principal opinion claims that Proposition C should be deemed to have impliedly repealed S.B. 1181, but: "'Repeal by implication is disfavored, and if two statutes can be reconciled then both should be given effect.'" *Crawford v. Div. of Employment Sec.*, 376 S.W.3d 658, 665 (Mo. banc 2012). "If by any fair interpretation both statutes may stand, there is no repeal by implication and both statutes must be given their effect. When two provisions are not irreconcilably inconsistent, both must stand even if some tension exists between them." *Turner v. Sch. Dist. of Clayton*, 318 S.W.3d

4

660, 667 (Mo. banc 2010) (internal quotation marks and citations omitted). This Court has made clear that, when two statutes address the same subject matter and one states, "notwithstanding any other provision of the law," by their plain language, they do not conflict. *State ex rel. City of Jennings v. Riley*, 236 S.W.3d 630, 631-32 (Mo. banc 2007).[4]

## Initiative and Referendum

The People of the State of Missouri adopted a constitution dividing the powers of government into "three distinct departments": legislative, executive, and judicial. Mo. Const. art. II, § 1.; Mo. Const. of 1875, art. III; Mo. Const. of 1820, art. II. Initially, the legislative power was vested solely in the General Assembly, consisting of a senate and house of representatives. Mo. Const. of 1875, art. IV, § 1; Mo. Const. of 1820, art. III, § 1. In 1908, the People adopted the initiative and referendum by constitutional amendment, "reserv[ing] to themselves" the power to enact laws and reject the General Assembly's enactments. Mo. Const. of 1875, art. IV, § 57 (1908); 1909 Mo. Laws 906, 906. The 1945 revisions to Missouri Constitution retained the initiative and referendum provisions in substantially the same form. *See* Mo. Const. art. III, §§ 49-53; Gen. Assemb. Comm. on Legis. Research, *Report No. 5: Constitution of the State of Missouri with Annotations and Index*, 55-57 (Lester G. Seacat ed., 1945).

---

[4] "'This Court's primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue.'" *Ivie v. Smith*, 439 S.W.3d 189, 202 (Mo. banc 2014). Statutes addressing the same subject matter (in other words, *in pari materia*) "are intended to be read consistently and harmoniously." *State ex rel. Rothermich v. Gallagher*, 816 S.W.2d 194, 200 (Mo. banc 1991). "All consistent statutes relating to the same subject matter

5

However, initiatives and referenda differ fundamentally. A referendum petition allows the People to "approve or reject" laws already made. Mo. Const. art. III, § 49. Its purpose is to retain in the People a check on whether representative legislation is good or bad, which is analogous to the governor's power to check the General Assembly by signing or vetoing bills. *See State ex rel. Drain v. Becker*, 240 S.W. 229, 231 (Mo. banc 1922); *Brown v. Carnahan*, 370 S.W.3d 637, 673 (Mo. banc 2012) (Fischer, J., concurring); 82 C.J.S. *Statutes* §§ 143, 146 (2009). In contrast, an initiative petition allows the People to "propose and enact or reject laws . . . independent of the general assembly." Mo. Const. art. III, § 49. The purpose of the initiative is to allow the People to check an idle representative government when work needs to be done. *See State ex rel. Drain*, 240 S.W. at 231; *Brown*, 370 S.W.3d at 673 (Fischer, J., concurring); 82 C.J.S. *Statutes* § 144.

The power of the People to legislate by initiative is on "equal footing" with the General Assembly's power to legislate. Cathy R. Silak, *The People Act, the Courts React: A Proposed Model for Interpreting Initiatives in Idaho*, 33 IDAHO L. REV. 1, 18 (1996); *see* 82 C.J.S. *Statutes* §§ 146, 180 (collecting cases); 42 Am. Jur. 2d *Initiative and Referendum* § 1, at 506 & n.3 (2010) (collecting cases). In other words, neither is less than nor greater than the other. *See* 82 C.J.S. *Statutes* §§ 146, 180. Accordingly, the General Assembly is free to modify, amend, or repeal statutes passed by initiative. Mo.

---

are in pari materia and are construed together as though constituting one act, whether adopted at different dates or separated by long or short intervals." *Id.*

Const. art. III, § 54(b); 82 C.J.S. *Statutes* §§ 147, 180; *see also State ex rel. Halliburton v. Roach*, 130 S.W. 689, 693-94 (Mo. banc 1910).

The debates of the constitutional convention of 1945 support this principle. *See Debates of the Missouri Constitutional Convention 1945*, vol. II at 399-400, 441-43, 524-28 (Stenotype Studios of St. Louis 1945). Prior to 1945, the constitution required bills referring measures to the People to contain certain language in an "enacting clause," but it did not expressly require an enacting clause for initiative petitions.[5] *See* Mo. Const. of 1875, art. IV, § 57 (1908). The 1945 constitution added: (1) an express enacting clause requirement for initiatives; and (2) a single subject requirement, in order to bring initiative legislation in line with enactments of the General Assembly. *See* Mo. Const. art. III, § 50; *Debates*, at 399-400; 441-43.

Although some delegates initially doubted the legislature's power to later repeal or modify initiative legislation, see *id.* at 510-11, 522, there was a consensus that enactments by the General Assembly had equal force with initiative legislation. *See id.* at 526. The convention, after voting to retain the initiative, struck down as unnecessary a substitute amendment stating that "[a] law enacted by the initiative shall have the force of a law enacted by the General Assembly and no other." *Id.* at 524, 528. The purpose of the original amendment, as well as the substituted language, was to place the same limits on the initiative that applied to the General Assembly. *Id.* at 524-26. The proponent of the substitute amendment offered this alternative language in part because a minority of

---

[5] The enacting clause states, "Be it enacted by the people of the state of Missouri." Mo. Const. art. III, § 50; Mo. Const. of 1875, art. IV, § 57 (1908).

delegates had suggested initiative legislation might be construed to have more force than the General Assembly's enactments. *See id.* at 526. That delegate eventually conceded, however, that his substitute amendment was unnecessary for that purpose because it would not change then existing law and was "merely a precaution." *Id.*

Another delegate summed up his own understanding of the equal footing principle:

> Well, now if there is any effort here on the part of any one to give the people right to enact a law by the initiative that doesn't have the same force of effect as a law like the Legislature why I can't conceive it. . . . I certainly won't feel that any lawyer or a Supreme Court judge would take that view. . . . [T]he gentleman has not yet convinced me that his substitute would bring any change in addition to what already exists under the law.

*Id.* The convention rejected the substituted language because the principle that initiative laws bear equal force to laws enacted by the General Assembly was already understood. *See id.* at 526-28; *State ex rel. Halliburton*, 130 S.W. at 693-94; *see also State v. Honeycutt*, 421 S.W.3d 410, 416 (Mo. banc 2013) (noting that the delegates to the 1875 constitution refused to define the term "retrospective" because the term already had an accepted meaning).

### *Drain* Supports Harmonizing §§ 393.1030 and 393.1050

The principal opinion relies on *Drain*. The *Drain* case, however, differs from this case fundamentally because it addressed a referendum, not an initiative. 240 S.W. at 230. Before the referendum in that case could be voted, the General Assembly repealed the statute at issue and enacted another substantially similar one in its place. *Id.* If the repeal were valid, the vote on the referendum would have been meaningless because the original

8

statute no longer would have existed. *See id.* at 232; *see also id.* at 235 (Graves, J., concurring). This Court held that the General Assembly lacked authority to repeal the statute because the Missouri Constitution prohibited the General Assembly from nullifying the referendum. *Id.* at 232. *But see McBride v. Kerby*, 260 P. 435, 437-38 (Ariz. 1927) (refusing to follow *Drain* and holding that the Arizona legislature may enact legislation on the same subject matter as a pending referendum) (*overruled on other grounds by Adams v. Bolin*, 247 P.2d 617, 621 (Ariz. 1952)).

Unlike the referendum in *Drain*, which the General Assembly attempted to completely nullify, the initiative proposal here remains operative in conjunction with, and is easily harmonized with, the General Assembly's enactment. Both satisfy the policy of encouraging renewable energy. Section 393.1050 did not preemptively repeal the 15% renewable energy requirement set out in § 393.1030. The General Assembly's policy decision to not impose the solar carve out and rebate requirements on electrical corporations who met the 15% requirement advances the policy of utility companies using renewable energy by offering an incentive for early substantial compliance. The principal opinion concedes the two statutes can easily be harmonized and would not raise any concerns if both were enacted into law by the General Assembly or initiative process. Slip op. at 10. *See State ex rel. Rothermich*, 816 S.W.2d at 200.

### No Special Rules for Initiatives

The principal opinion's holding actually goes beyond the holding of *Drain* and creates a special rule giving initiative legislation precedence over representative legislation. This is not supported by article III, section 49, which provides in full:

9

**Reservation of power to enact and reject laws.**—The people reserve power to propose and enact or reject laws and amendments to the constitution by the initiative, independent of the general assembly, and also reserve power to approve or reject by referendum any act of the general assembly, except as hereinafter provided.

Article III, section 51 provides:

**Appropriations by initiative—effective date of initiative laws— conflicting laws concurrently adopted.**—The initiative shall not be used for the appropriation of money other than of new revenues created and provided for thereby, or for any other purpose prohibited by this constitution. Except as provided in this constitution, any measure proposed shall take effect when approved by a majority of the votes cast thereon. When conflicting measures are approved at the same election the one receiving the largest affirmative vote shall prevail.

Article III, section 52(b) provides:

**Veto power—elections—effective date.**—The veto power of the governor shall not extend to measures referred to the people. . . . This section shall not be construed to deprive any member of the general assembly of the right to introduce any measure.

These provisions provide the only limitations on the initiative process. These provisions do not limit the General Assembly's coequal power to legislate, nor do any of the other provisions that follow article III, section 49. The General Assembly is free to legislate concurrently on the same subject. The only prohibition in the initiative process is that which relates to the veto power of the Governor. Mo. Const. art. III, § 52(b).

There is nothing contained in the Missouri Constitution that either expressly or impliedly, in any degree, conflicts with, inhibits, limits, abridges, or prohibits the power of the General Assembly originally granted to it to enact, amend, modify or repeal any law. The fact that the People themselves may propose or enact laws in connection with

the General Assembly in no manner minimizes, conflicts with, or prohibits the General Assembly from itself also enacting the law that might be desired by the People. The evident purpose of the constitutional provisions concerning the initiative process was not to curtail or limit the powers of the General Assembly to enact laws, but the purpose was to compel the General Assembly of measures desired by the People, and, if the General Assembly neglected to act as so desired by the People, that then the People, by means of the initiative might enact such measures into laws themselves.[6]

Of the 20 other state constitutions that allow legislation by initiative, many specifically limit their legislatures' power to either repeal or amend initiative legislation. *See* Nicholas R. Theodore, *We the People: A Needed Reform of State Initiative and Referendum Procedures*, 78 MO. L. REV. 1401, 1412 (2013); *Initiative and Referendum States*, NAT'L CONF. OF STATE LEGISLATURES (last updated Sept. 2012).[7] California outright bars its legislature from independently repealing or amending initiative legislation. Theodore, *supra*, at 1412; Cal. Const. art. II, § 10(c). Some states impose a waiting period for repeals of initiative legislation (e.g., Alaska) or impose a supermajority vote for amendments or repeals (e.g., Arkansas). Theodore at 1412; Alaska Const. art. XI, § 6; Ark. Const. amend. 7. Others impose a supermajority vote for a specified waiting period (e.g., Washington) or bar repeals but allow amendments furthering the

---

[6] And, recognizing the right of the General Assembly to enact laws as it pleased, within all its constitutional powers, the referendum was designed as a check upon all legislative enactments not favored by the People.

[7] Available on file with this Court and at http://www.ncsl.org/research/elections-and-campaigns/chart-of-the-initiative-states.aspx (last visited Jan. 29, 2015).

11

initiative's purpose if there is a supermajority vote (e.g., Arizona). Theodore at 1412; Wash. Const. art. II, § 1(c); Ariz. Const. art. IV, pt. 1, § 1(6)(B)-(C).

If the framers of the Missouri Constitution had adopted language something like the following: "No legislature shall have power to repeal any initiative measure referred to a vote of the people," or "Initiated laws can be amended or repealed only by a vote of the people," then the Constitution would have expressly prohibited the General Assembly from amending or repealing initiated laws. But no such limitation of the legislative power appears in the Missouri Constitution. Renew Missouri has, in effect, convinced a majority of this Court to read into the constitution something that is not either expressed or implied therein.

The result of the principal opinion may be a good policy decision, but the Missouri Constitution contains no limitations on the General Assembly's power to legislate before, during, or after the initiative petition. "Judicial intervention is not an appropriate substitute for the give and take of the political process." *State ex rel. Humane Soc'y of Mo. v. Beetem*, 317 S.W.3d 669, 674 (Mo. App. 2010). The principal opinion acknowledges that, under the general rule of statutory interpretation, both statutes would be given effect. It creates a special rule of statutory interpretation by holding that § 393.1030 impliedly repealed § 393.1050 on the theory that the General Assembly cannot change the effect of an initiative while it is pending. This new rule of statutory interpretation has no foundation in the text of the Missouri Constitution.

12

**Conclusion**

Empire complies with the 15% renewable energy requirement set out in § 393.1030.1. Section 393.1050 was passed to encourage reaching the 15% requirement earlier. In my view, the People by adopting a provision for initiative legislation simply reserved to themselves a share of legislative power, but they did not intend to establish a trump card over the republican form of the government. The government is still divided into the legislative, executive, and judicial branches, the duties of which are discharged by representatives selected by the People. Laws proposed and enacted by the People under the initiative clause of the constitution are subject to the same constitutional limitations as other statutes and may be amended or repealed by the General Assembly at will. Sections 393.1030 and 393.1050 should both be given the legal effect required by the Missouri Constitution, and the Commission's order, which did just that, should be affirmed.

_____
Zel M. Fischer, Judge

13