STATE EX REL. William
FLEMING, Relator,

v.

The MISSOURI BOARD OF PRO-
BATION AND PAROLE, Re-
spondent.

No. SC 95764

Supreme Court of Missouri,
en banc.

Opinion issued April 4, 2017

M. Coulter of the attorney general's office in Jefferson City, (573) 751-3221

## ORIGINAL PROCEEDING
## IN HABEAS CORPUS

PATRICIA BRECKENRIDGE, CHIEF JUSTICE

William Fleming's probation was revoked and execution of his concurrent seven-year prison sentences was ordered after he failed to pay his court costs within the first three years of his probation. Mr. Fleming subsequently filed a petition for a writ of habeas corpus alleging that his liberties were being unlawfully restrained because the sentencing court violated his due process and equal protection rights by revoking his probation solely because he was indigent.

This Court finds that the sentencing court improperly revoked Mr. Fleming's probation because it failed to inquire into the reasons for Mr. Fleming's failure to pay his court costs. Despite Mr. Fleming raising the issue of his inability to pay and several reports from his probation officer stating that Mr. Fleming was struggling financially, the sentencing court did not question Mr. Fleming as to his ability to pay prior to revoking his probation. Instead, the sentencing court relied on the fact that Mr. Fleming admitted he violated a condition of his probation by failing to pay his court costs within the first three years of his probation. Mr. Fleming's admission, however, was only that he did not make his payments as ordered. It does not establish that he had the ability to pay but willfully refused to do so or that he failed to make bona fide efforts to acquire the resources to pay his court costs.

Because there was no inquiry into, or findings regarding, the reasons Mr. Fleming failed to pay his court costs, the sentencing court's revocation of Mr. Fleming's

Fleming was represented by Amy E. Lowe of the public defender's office in St. Louis, (314) 340-7662

The State was represented by Stephen Hawke, Michael J. Spillane and Caroline

probation solely for failure to pay outstanding court costs violated his Fourteenth Amendment rights. It follows that Mr. Fleming's probation was improperly revoked and he is entitled to be discharged from his sentence of imprisonment and subsequent parole and restored to his status as a probationer.

Under normal circumstances, Mr. Fleming's probationary term would continue upon his restoration to probationary status. In this case, however, Mr. Fleming's probation term has expired. Therefore, the only options for the sentencing court are either to discharge Mr. Fleming or to reinitiate revocation proceedings.

The evidence before the sentencing court was sufficient to establish, as a matter of law, that (1) Mr. Fleming was indigent such that he could not pay his court costs despite bona fide efforts to do so and (2) the state's interests in punishment and deterrence were otherwise satisfied by the conditions Mr. Fleming already completed and by his time served following the improper revocation of his probation. Nevertheless, because the sentencing court expressly limited the probation revocation hearing by stating the hearing was solely for purposes of disposition, the state may not have had the opportunity to present other evidence on this issue. If such additional evidence exists, the state or the sentencing court has 60 days from the date the mandate issues in this case to reiniti-

ate revocation proceedings against Mr. Fleming. If the state or the sentencing court does not so elect, Mr. Fleming must be discharged from probation.

## Factual and Procedural Background

On July 31, 2008, Mr. Fleming pleaded guilty to two counts of domestic assault in the second degree, section 565.073.[1] The court sentenced him to seven years in prison on each count and ordered the sentences to be served concurrently. The sentencing court suspended execution of Mr. Fleming's sentences and placed him on probation for a term of five years. The sentencing court imposed several special conditions on Mr. Fleming's probation, including the completion of a domestic abuse or anger management program and the completion of a mental health program. The sentencing court also ordered Mr. Fleming to pay his "court costs" and $92 to the crime victims' compensation fund[2] within the first three years of his probation.[3] In addition to the judgment in favor of the crime victims' compensation fund, the ledger of "court costs" assessed showed costs and fees of $301.50 and a board bill of $3,870. Mr. Fleming, therefore, was ordered to pay a total of $4,263.50 within the first three years of his probation.[4] His probation term was set to expire July 30, 2013.

1. All statutory citations are to RSMo Supp. 2008 unless otherwise noted.

2. The court ordered Mr. Fleming to pay $46 to the crime victim's compensation fund on each count of domestic assault.

3. It was also a condition of Mr. Fleming's probation that he pay a monthly intervention fee, in an amount set by the Missouri Department of Corrections pursuant to section 217.690, that was due and payable on the first day of the first month following his placement on probation. Mr. Fleming, however, was eli-

gible for a waiver of his intervention costs; as a result, all his monthly intervention fees were waived.

4. At the conclusion of Mr. Fleming's plea, the sentencing court also stated that it "enters judgment for the State and against [Mr. Fleming] in the amount of $300 for providing him the services of an attorney." The record does not reflect whether Mr. Fleming ever paid the $300 in attorney fees, and such amount is not included in the ledger of court costs.

While on probation, Mr. Fleming was unemployed. A case summary report dated May 19, 2009, states that Mr. Fleming was receiving treatment for "mental health issues" and that, as of April 2009, Mr. Fleming was approved for Supplemental Security Income (SSI) payments of $449.34 per month. He agreed to pay $118 a month, and extra when he received a balance of $1,500 from SSI, toward his court costs. The report also states that Mr. Fleming was completing anger management classes because he was financially unable to attend domestic assault classes, which cost $40 per week for 27 weeks. The report further indicated Mr. Fleming was living with his girlfriend, who had physical limitations and was not able to work, but who helped him monitor his probation appointments and requirements.

In August 2009, Mr. Fleming's probation officer issued a notice of citation after Mr. Fleming failed to make his scheduled payments. The notice states that Mr. Fleming had not paid the $118 a month as agreed and that, as of May 2009, Mr. Fleming still owed $4,145.50 in court costs. In a subsequent case summary report, Mr. Fleming's probation officer noted that Mr. Fleming continued "to have financial difficulties" but was paying $10 a month. The probation officer also noted that Mr. Fleming's efforts to obtain housing assistance had been unsuccessful, but that Mr. Fleming had been accepted into a program at a Vocational Rehabilitation Center to sponsor his going back to school.

On August 2, 2011, Mr. Fleming's probation officer filed a violation report after Mr. Fleming failed to pay his court costs within the first three years of his probation. The report notes that Mr. Fleming was "unemployed and receiving mental health treatment until he was granted disability in April 2009" and that Mr. Fleming made $10 payments "with a few missed payments" due to his financial struggles. The report requested court action to address Mr. Fleming's inability to pay the court costs and discussed the possibility of making alternative arrangements, such as community service, to count as credit toward his court costs. The report also noted that the plan was for Mr. Fleming "to continue to pay $10 per month toward Court costs, until further notice."

On September 9, 2011, the sentencing court held a probation revocation hearing. At the hearing, Mr. Fleming admitted to violating the condition of his probation that required him to pay his court costs within three years. The sentencing court found Mr. Fleming had violated his probation but deferred disposition of the matter. It then ordered Mr. Fleming to make minimum payments of $50 per month and continued the hearing until December, by which time Mr. Fleming was required to pay a minimum of $150. Mr. Fleming timely paid the $150. A case summary report, dated November 3, 2011, states the amount of Mr. Fleming's SSI was then $674.

The court continued or rescheduled the probation violation hearing until April 12, 2013, when a hearing was held. At the time of the hearing, Mr. Fleming had paid more than $1,100 but still owed more than $3,000 in court costs. Mr. Fleming requested that his probation not be revoked because he could not afford to pay the remaining court costs. He asserted he was indigent, as evidenced by the fact that he qualified for a public defender and that his only source of income was his SSI disability payments. Mr. Fleming further asserted that he had complied with all other conditions of his probation and that the $1,100 he had paid in court costs showed he was making a good faith effort to pay. The state argued that Mr. Fleming had the ability to pay his court costs because, when threatened with revocation, he would pay

lump sums of more than $100 within a short period of time. The state further argued that Mr. Fleming should have raised his inability to pay prior to his admission at the 2011 revocation hearing.

After hearing argument from both parties, the sentencing court revoked Mr. Fleming's probation and ordered execution of his concurrent seven-year sentences. In revoking Mr. Fleming's probation, the sentencing court stated that the purpose of the hearing was solely for purposes of disposition because Mr. Fleming had already admitted to violating his probation. The sentencing court acknowledged that people should not "be sent to prison because they can't pay their court costs" but stated that just because someone is represented by a public defender does not mean he or she should be relieved of paying court costs. The sentencing court concluded that Mr. Fleming failed to comply with the probation order despite the court's willingness to work with him; therefore, its only option was to revoke his probation. The sentencing court made no inquiry or findings at the hearing as to whether Mr. Fleming had the ability to pay, and, if so, whether he willfully refused to do so or whether he failed to make bona fide efforts

to acquire the resources to pay his court costs.

On June 20, 2016, Mr. Fleming sought a writ of habeas corpus from this Court [5] alleging that he was being unlawfully confined because his probation was revoked solely because he could not pay his court costs, thereby violating his due process rights. At the time he filed his writ petition, Mr. Fleming was incarcerated at Algoa Correctional Center. Subsequently, Mr. Fleming was released on parole and filed an amended writ petition against the Board of Probation and Parole. In his amended petition, Mr. Fleming asserts that, although on parole, his liberties are still unlawfully restrained as a result of his probation being improperly revoked. This Court issued a writ of habeas corpus.

### Habeas Standard

■■■■ This Court has the authority to "issue and determine original remedial writs," including writs of habeas corpus. Mo. Const. art. V, sec. 4. "Every person committed, detained, confined or restrained of his liberty, within this state, for any criminal or supposed criminal matter, or under any pretense whatsoever ... may prosecute a writ of habeas corpus ... to inquire into the cause of such confinement or restraint."[6] Section 532.010. "[A] writ of

5. Prior to filing with this Court, Mr. Fleming sought and was denied a writ of habeas corpus from both the circuit court of Cole County and the court of appeals.

6. Judge Fischer's dissenting opinion asserts that the case became moot upon Mr. Fleming being released on parole because the writ of habeas corpus is limited to those seeking relief from being physically held in a place of custody. In doing so, Judge Fischer's dissenting opinion applies the principle of statutory construction known as *noscitur a sociis*—a word is known by the company it keeps—to interpret "restrained of his liberty" to necessarily mean being physically restrained in a place of custody. Judge Fischer's dissenting opinion's interpretation, however, would

make "restrained of his liberty" superfluous language. "This Court must presume every word, sentence or clause in a statute has effect, and the legislature did not insert superfluous language." *Bateman v. Rinehart*, 391 S.W.3d 441, 446 (Mo. banc 2013). Moreover, while this Court has never interpreted the "restrained of his liberty" language, this Court has expressly stated, in the context of interpreting Missouri's habeas statute, that "any restraint which precludes freedom of action is sufficient, and actual confinement in jail is not necessary." *Hyde v. Nelson*, 287 Mo. 130, 229 S.W. 200, 202 (1921). And, although addressed in the context of determining whether a movant was in custody for purposes of post-conviction relief, this Court has twice reiterated the principle that, for pur-

habeas corpus may be issued when a person is restrained of his or her liberty in violation of the constitution or laws of the state or federal government." *State ex rel. Amrine v. Roper*, 102 S.W.3d 541, 545 (Mo. banc 2003). "[H]abeas corpus proceedings are limited to determining the facial validity of confinement" and are "properly invoked to challenge an improper probation revocation." *State ex rel. Nixon v. Jaynes*, 73 S.W.3d 623, 624 (Mo. banc 2002). The petitioner bears the burden of establishing that he or she is entitled to habeas relief. *Id.*

### Mr. Fleming's Probation Was Improperly Revoked

Mr. Fleming asserts he is entitled to be discharges from parole because the sentencing court violated his due process and equal protection rights by revoking his probation solely because he was indigent. Mr. Fleming relies on *Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), for the proposition that probation cannot be revoked due to a probationer's inability to pay outstanding fines or court costs.

In *Bearden*, a court revoked the defendant's probation because he failed to pay a

fine and restitution. *Id.* at 663, 103 S.Ct. 2064. The defendant asserted that imprisoning him solely because of his inability to pay violated the Fourteenth Amendment. *Id.* The United States Supreme Court reasoned:

The decision to place the defendant on probation ... reflects a determination by the sentencing court that the State's penological interests do not require imprisonment. A probationer's failure to make reasonable efforts to repay his debt to society may indicate that this original determination needs reevaluation, and imprisonment may now be required to satisfy the State's interests. But a probationer who has made sufficient bona fide efforts to pay his fine and restitution, and who has complied with the other conditions of probation, has demonstrated a willingness to pay his debt to society and an ability to conform his conduct to social norms.

*Id.* at 670 (internal citation omitted). The Supreme Court concluded that, "in revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay." *Id.* at 672, 103 S.Ct. 2064. The Supreme Court further instructed:

pose of habeas relief, actual confinement is not required. *See Nicholson v. State*, 524 S.W.2d 106, 109 (Mo. banc 1975) ("[F]or purposes of habeas corpus, any restraint which precludes freedom of action is sufficient, and actual confinement is not necessary."); *State v. Gray*, 406 S.W.2d 580, 582 (Mo. 1966) ("[F]or purposes of habeas corpus, any restraint which precludes freedom of action is sufficient, and actual confinement in jail is not necessary."). At least one Missouri court has found that it was appropriate for a parolee to seek habeas relief because he was restrained of his liberties. *See State ex rel. Nixon v. Dierker*, 22 S.W.3d 787, 789 (Mo. App. 2000) (holding that, because the parolee "was restrained of his liberty within this state and was inquiring into the cause of his restraint, a petition for a writ of habeas corpus was ap-

propriate"). Similarly, although said in the context of determining whether a parolee was "in custody" for purposes of the federal habeas statute, 28 U.S.C. § 2241, the United States Supreme Court has held that parole places significant restraints on a parolee's personal liberties. *See Jones v. Cunningham*, 371 U.S. 236, 242–43, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963). Additionally, section 217.690.2 provides: "Every offender while on parole shall remain in the legal custody of the department [of corrections] but shall be subject to the orders of the board." Mr. Fleming's order of release on parole specifically states that he "shall remain in the legal custody of the Missouri Department of Corrections." Mr. Fleming, therefore, was restrained of his liberty for purposes of seeking habeas relief pursuant to section 532.010.

If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternate measures of punishment other than imprisonment. Only if alternate measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay. To do otherwise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment.

*Id.* at 672–73. The Supreme Court then remanded the case for a determination as to whether the defendant made a bona fide effort to pay his fine and restitution. *Id.* at 674, 103 S.Ct. 2064. The Supreme Court stated that, without such a determination, fundamental fairness required that the defendant remain on probation. *Id.*

■ Like in *Bearden*, the sentencing court revoked Mr. Fleming's probation without determining why he failed to pay his court costs. At the 2013 revocation hearing, the sentencing court made no inquiry as to whether Mr. Fleming had the ability to pay but willfully refused or failed to make bona fide efforts to acquire the resources to pay his remaining court costs; nor did the court consider alternative measures of punishment other than imprisonment. Instead, it focused on the fact that Mr. Fleming had previously admitted to violating his probation. Despite argument from Mr. Fleming that he could not pay because he was indigent, the sentencing court failed to comply with the directives in *Bearden* that, prior to revocation, a court *must* inquire as to the reasons for failure to pay outstanding court costs and, if the failure to pay was not willful, *must* consider whether the probation conditions already completed or other alternative measures of punishment besides imprisonment adequately satisfy the state's interests in punishment and deterrence.

The state attempts to excuse the sentencing court's failure to inquire by asserting that it is implicit in Mr. Fleming's admission that he could, in fact, make payments but had not made bona fide efforts to do so. Mr. Fleming, however, admitted only to failing to pay his court costs within the prescribed three years:

> The court: And Mr. Fleming, a violation report has been filed against you that alleged you violated Condition 11 of your probation in that you have failed to pay your court costs and your Crime Victims' Compensation Fund within the time frame as you were ordered to do so by this Court. Do you understand that allegation, sir?
>
> Mr. Fleming: Yes, I do.
>
> The court: And do you admit that that allegation is true?
>
> Mr. Fleming: Yes.
>
> The court: For the record, the Court accepts the admission of this defendant. The Court finds that this defendant did in fact violate Condition 11 of his probation by failing to take care of his financial obligations, specifically court costs as ordered to do so by this Court.

Nothing can be inferred from this admission as to why Mr. Fleming failed to pay his court costs.

The record before the sentencing court includes substantial evidence as to why

Mr. Fleming failed to pay his court costs. In describing the circumstances surrounding the violation, the violation report referenced by the sentencing court states that Mr. Fleming "continues to receive mental health treatment and struggles financially" and that Mr. Fleming "agreed he could only afford a $10 payment per month." The report even recommends that Mr. Fleming be continued on probation and requests that the sentencing court consider alternative arrangements, such as community service, to count as credit toward his court costs. Other case summary reports similarly indicate that Mr. Fleming lacked the funds to pay for the domestic assault program and that he qualified for waiver of his monthly intervention fees due to his limited income. Yet, the sentencing court never inquired about Mr. Fleming's ability to pay his remaining court costs at the 2011 revocation hearing. Accordingly, the admission, in and of itself, does not establish Mr. Fleming had the ability to pay but willfully refused or failed to make bona fide efforts to acquire the resources to pay his court costs.

Moreover, even if Mr. Fleming's admission was somehow indicative of his unwillingness to pay, Mr. Fleming made the admission more than a year and a half prior to the sentencing court revoking his probation. In the 19 months between the 2011 hearing and the 2013 hearing, the sentencing court continued to instruct Mr. Fleming to pay $50 a month in court costs. Although Mr. Fleming missed some of his scheduled monthly payments, he did make payments totaling $864.95 toward his court costs during those 19 months.[7] Mr. Fleming made significant, genuine efforts to pay his court costs in the interim between his admission and the 2013 revocation hearing.

The sentencing court failed to acknowledge that, despite his limited financial means, Mr. Fleming made considerable efforts to comply with the conditions of his probation following the 2011 revocation hearing. Not only did Mr. Fleming continue to make court cost payments, he satisfied all other conditions of his probation, including completing an anger management course and attending a mental health program. The only condition not satisfied at the time of the 2013 revocation proceeding was the payment of all court costs within the first three years of his probation. Despite evidence of Mr. Fleming's efforts to pay, his limited resources, his completion of all other probation requirements, and the extended period of time that had passed since his admission of the violation, the sentencing court failed to inquire about Mr. Fleming's ability to pay his remaining court costs prior to revoking his probation in 2013. It follows that, at no time prior to the revocation of Mr. Fleming's probation, did the sentencing court comply with the directives in *Bearden* that required inquiry into the reasons for Mr. Fleming's failure to pay his court costs, findings as to his willingness and efforts to pay, and, potentially, consideration of whether the state's interests in punishment and deterrence are adequately satisfied by the conditions Mr. Fleming has already completed or alternative measures of punishment other than imprisonment.

Although the state asserts in its brief that the sentencing court concluded Mr. Fleming willfully refused to pay his court costs, the sentencing court made no findings regarding the reasons for Mr. Fleming's failure to pay as required under *Bearden*. The order revoking Mr. Fleming's probation states only that Mr. Fleming "previously admitted to Violation of

7. Had Mr. Fleming made every monthly payment of $50 during those 19 months, he would have paid a total of $950. That is a difference of less than $100.

Condition #11 of his probation, therefore Court does revoke [Mr. Fleming]'s probation." *Bearden*, however, "requires evidence and findings [as to the reasons for the failure to pay] as a matter of due process and, absent such evidence and findings, [probation] may not be revoked." *Schmeets v. Turner*, 706 S.W.2d 504, 507 (Mo. App. 1986). Such requirement is consistent with the minimum requirements of due process for revocation proceedings, which require the factfinder to make a written statement as to the evidence relied on and reasons for revoking probation. *Abel v. Wyrick*, 574 S.W.2d 411, 417 (Mo. banc 1978). And, although the due process rights of a probationer are satisfied "if the record of the proceedings clearly shows what reasoning and evidence were relied upon to revoke probation," *id.* at 420, this record is absent of any determination by the sentencing court regarding whether Mr. Fleming willfully refused to pay his court costs or failed to make bona fide efforts to do so.

At the 2013 revocation hearing, the sentencing court focused on Mr. Fleming's previous admission that he violated his probation because he failed to pay all his court costs within the first three years of his probation. After hearing argument from both parties about Mr. Fleming's ability to pay his court costs, the sentencing court stated:

> [Mr. Fleming] admitted to violating his probation. The Court tried to work with him. He still has not complied with the conditions of his probation. The Court is left with no option but to revoke his probation. That's where we're at.
>
> So today the Court finds, having accepted the admissions of Mr. Fleming, that he did violate the conditions of his probation. We're here just for the sole purpose of disposition. The Court makes a record the Court is – Mr. Fleming did

not come on that day that he admitted, he did not come before the Court and say, Judge, I can't pay my court costs, I can't pay my obligations. He came in and he admitted. He said I'm not paying them, I'm not paying them and I admit that I violated my probation. And that's where we're at. That is what the Court has before it. What I have before me is what I have before me.

The record, therefore, reflects that, in revoking Mr. Fleming's probation, the sentencing court relied exclusively on Mr. Fleming's previous admission and put the onus on him for failing to raise his ability to pay prior to admitting he violated his probation. As previously discussed, however, a sentencing court *must* inquire into why the probationer failed to pay his or her court costs prior to revocation and *must* make a determination as to whether the probationer willfully refused to pay or failed to make sufficient bona fide efforts to acquire the resources to pay. *Bearden*, 461 U.S. at 672–73, 103 S.Ct. 2064. Here, the sentencing court made no such inquiry or determination even after Mr. Fleming raised the issue, and there was evidence before the court to support such a finding. As such, the sentencing court effectively imprisoned Mr. Fleming solely for failure to pay his outstanding court costs.

Without a determination as to Mr. Fleming's ability to pay and his willingness or bona fide efforts to do so, the law required that he remain on probation. *Id.* The sentencing court, therefore, improperly revoked Mr. Fleming's probation. Because Mr. Fleming's probation was improperly revoked, he is ordered discharged from his sentence of imprisonment and subsequent parole and restored to his status as a probationer.

██ Normally, Mr. Fleming's probationary term would continue upon his restoration to probationary status. In this

case, however, had Mr. Fleming's probation not been improperly revoked, his probation term would have expired July 30, 2013. Therefore, the only options for the sentencing court are either to discharge Mr. Fleming or to reinitiate revocation proceedings.[8]

■ If the sentencing court subsequently seeks to revoke Mr. Fleming's probation for failing to pay his required court costs, it must conduct a hearing to determine whether Mr. Fleming had the ability to pay or whether he failed to make bona fide efforts to acquire the resources to pay his court costs.[9] If Mr. Fleming did not have the ability to pay his outstanding court costs despite making bona fide efforts to do so, the sentencing court must consider whether alternative measures of punishment satisfy the state's interests in punishment and deterrence. Typically, alternative measures of punishment may include an extension of time to

pay, a reduction of imposed fees, fines or costs required to be paid, credit for community service, and credit for successful completion of court-approved programs, such as drug treatment programs, educational programs, self-improvement programs, or mental health programs. *See* section 559.021.7. In considering alternative measures, a sentencing court also should consider that it has the ability to waive or suspend payment of imposed fines, costs, or restitution. *Id.* It is only upon a finding that the state's interests in punishment and deterrence cannot be satisfied by these or other appropriate alternative measures that the sentencing court can revoke Mr. Fleming's probation despite his inability to pay and his efforts to do so.

The facts and circumstances before this Court establish that Mr. Fleming was unemployed and that his only source of income was his monthly SSI benefits.[10]

---

8. Typically, when a "probation term ends, so does the court's authority to revoke probation." *State ex rel. Strauser v. Martinez*, 416 S.W.3d 798, 801 (Mo. banc 2014). But section 559.036.8 provides that the "power of the court to revoke probation shall extend ... for any further period which is reasonably necessary for the adjudication of matters arising before its expiration" if certain conditions are met. A sentencing court's authority to revoke extends beyond the expiration of the probation term only if: (1) "the court must have manifested its intent to conduct a revocation hearing during the probation term"; and (2) the court "must have made every reasonable effort to notify the probationer and hold a hearing before" the end of the probation term. *Strauser*, 416 S.W.3d at 801. The sentencing court manifested its intent and did, in fact, conduct a revocation hearing prior to the expiration of Mr. Fleming's probation term. It follows that, under the facts and circumstances of this case, the sentencing court's authority to conduct revocation proceedings extends beyond the probation term as it is reasonably necessary to adjudicate the matters regarding Mr. Fleming's probation violation, which arose prior to the expiration of his term.

9. Recently, this Court approved Model Local Rule 69.01 for determining indigent status in municipal division cases. Under the rule, a person is presumed indigent if the person "[h]as unencumbered assets totaling under $5000, and ... [h]as total household monthly income below 125% of Federal Poverty Guidelines." The Federal Poverty Guidelines for a one person household's monthly income is currently $1,237. Although not necessarily applicable to this case, the rule goes through a list of questions regarding the defendant's ability to pay fines and costs, including whether the defendant is receiving public assistance and the amount of monthly household income the defendant receives.

10. Some evidence in the record indicates that Mr. Fleming was receiving $449.34 in monthly SSI benefits. Other evidence indicated that his monthly income may have increased to $674 in SSI benefits prior to revocation of his probation. Evidence in the record also indicated that Mr. Fleming expected to receive a balance of $1,500 in SSI benefits.

There was no evidence of what Mr. Fleming's monthly obligations were or where his money went. Likewise, there was no evidence of any family, friends, or others from whom Mr. Fleming could borrow money to pay his court costs. Mr. Fleming's probation officer reported that Mr. Fleming was struggling financially and recommended the sentencing court consider community service as an alternative punishment. And although Mr. Fleming's fee report shows his monthly court costs payments were sporadic at times, it also reflects Mr. Fleming would attempt to make up for his missed payments with larger payments in the following months. Furthermore, Mr. Fleming completed all other terms of his probation, including an anger management course and mental health treatment and served three years and two months in prison following the revocation of his probation.

The evidence before the sentencing court, therefore, was sufficient to establish, as a matter of law, that Mr. Fleming was indigent such that he could not pay his court costs despite bona fide efforts to do so and that the state's interests in punishment and deterrence were otherwise satisfied by the conditions Mr. Fleming already completed and by his time served following the improper revocation of his probation. Nevertheless, because the sentencing court expressly limited the probation revocation hearing by stating the hearing was solely for purposes of disposition, the state may not have had the opportunity to present other evidence on this issue.

## Conclusion

The sentencing court violated Mr. Fleming's due process and equal protection rights when it improperly revoked his probation for failure to pay court costs without first inquiring as to the reasons for his failure to pay, making findings as to whether he willfully refused to pay or failed to make bona fide efforts to acquire the resources to pay, and considering the conditions he has already satisfied or other alternative measures of punishment. Therefore, Mr. Fleming is ordered discharged from his sentence of imprisonment and subsequent parole and restored to his status as a probationer. If there is additional evidence regarding Mr. Fleming's ability to pay, the state or the sentencing court has 60 days from the date the mandate issues in this case to reinitiate revocation proceedings against Mr. Fleming. If the state or the sentencing court does not so elect, Mr. Fleming must be discharged from probation.

Stith, Draper, and Russell, JJ., concur;

Fischer, J., dissents in separate opinion filed;

Wilson, J., dissents in separate opinion filed.

Zel M. Fischer, Judge, dissenting.

I respectfully dissent because, in my view, the writ of habeas corpus is limited to those seeking relief from being physically held in a place of custody. For this reason, I would hold that this case was mooted when Fleming was released on parole.[1]

Article I, § 12 of the Missouri Constitution provides "[t]hat the privilege of the writ of habeas corpus shall never be suspended." When this state's current constitution was adopted in 1945, the writ of habeas corpus already had an established meaning within Missouri as it was codified in chapter 8, article 6 (§§ 1590 to 1660), RSMo 1939. The habeas statutes have since been reorganized into what is now

1. This Court has never granted habeas relief to someone already released on parole.

chapter 532,[2] but the statutory language quoted hereinafter has remained unchanged. Section 532.010 (formerly § 1590, RSMo 1939) governs who may seek state habeas relief, providing that "[e]very person **committed, detained, confined or restrained of his liberty,** within this state, for any criminal or supposed criminal matter, or under any pretense whatsoever . . . may prosecute a writ of habeas corpus . . . to inquire into the cause of such confinement or restraint." (Emphasis added). Having been released on parole, Fleming is certainly not committed, detained, or confined. Any argument that Fleming may seek state habeas relief would necessarily be based on a construction of the phrase "restrained of his liberty."

Read in isolation, this phrase could mean a number of things. But when the word or phrase at issue appears within a list of words, this Court "will apply the principle of statutory construction known as *noscitur a sociis*—a word [or phrase] is known by the company it keeps." *Union Elec. Co. v. Dir. of Revenue*, 425 S.W.3d 118, 122 (Mo. banc 2014). "Under this principle, a court looks to the other words listed in a statutory provision to help it discern which of multiple possible meanings the legislature intended." *Id. Noscitur a sociis* is "often wisely applied where a word is capable of many meanings **in order to avoid the giving of unintended breadth** in statutory construction." *Aquila Foreign Qualifications Corp. v. Dir. of Revenue*, 362 S.W.3d 1, 5 (Mo. banc 2012) (emphasis added) (internal quotations omitted). Here, the phrase "restrained of his liberty" is included in a list of words— "committed," "detained," and "confined"—

that all refer to being physically held in a place of custody. Applying *noscitur a sociis*, it follows that "restrained of his liberty" likewise refers to being *physically* restrained in a place of custody, not merely subject to conditions of parole supervision.

This construction is supported by another well-settled rule of statutory construction: "In determining the intent and meaning of statutory language, the words must be considered in context and sections of the statutes in pari materia, as well as cognate sections, must be considered in order to arrive at the true meaning and scope of the words." *State ex rel. Evans v. Brown Builders Elec. Co.*, 254 S.W.3d 31, 35 (Mo. banc 2008) (internal quotations omitted). "The provisions of a legislative act are not read in isolation but construed together, and if reasonably possible, the provisions will be harmonized with each other." *Id.* (internal quotations omitted).

Chapter 532 is replete with provisions indicating that state habeas relief applies only to those who are physically held in a place of custody. For example, § 532.020 (formerly § 1591, RSMo 1939) requires that a writ petition state "the place where" the petitioner is "imprisoned or restrained of his liberty" and why "the imprisonment" is illegal.[3] Section 532.030 (formerly § 1658, RSMo 1939) requires that a writ petition first be filed in the county in which the petitioner "is held in custody."[4] Section 532.080 (formerly § 1595, RSMo 1939) requires that an issued writ command the person who is restraining the petitioner to bring "the body of the person so detained or imprisoned, together with the time and

---

**2.** Statutory citations for chapter 532 are to RSMo 2000; statutory citations for chapter 559 are to RSMo Supp. 2013.

**3.** Notably, Rule 91.04(a)(2) also requires that a habeas petition state "[t]he place where the

person is detained," an impossibility for a petitioner already released on parole.

**4.** Rule 91.02(a) has the same requirement, specifically referring to "the county in which the person is held in custody."

cause of such imprisonment and detention, before the court or judge, without delay, to do and receive what shall then and there be considered concerning the person imprisoned or detained." Section 532.200 (formerly § 1607, RSMo 1939) further requires that any person served with the writ who has "in his custody or power, or under his restraint, the party for whose benefit the writ was awarded . . . shall also bring the body of such person before the court." And throughout chapter 532, the person petitioning for habeas relief is frequently referred to simply as a "prisoner." *See* §§ 532.050, .140, .220, .250, .270 to .310, .340 to .360, .430; *see also* §§ 1592, 1600, 1614, 1616, 1619, 1623, 1625, 1628, 1636, 1639 to 1642, RSMo 1939.

Considering the phrase "restrained of his liberty" in the context of the other words used in § 532.010, as well as the rest of chapter 532, it is evident that the phrase was not intended to be construed so broadly as to apply to a person who is merely subject to conditions of parole supervision. Rather, state habeas relief is properly limited to those who are physically held in a place of custody. This conclusion is consistent with this Court's previous explanation of the writ:

> The writ at common law was directed to the **custodian of the prisoner** and required the custodian to show the basis for which **the prisoner was being held**. . . . The statutes and Rule 91 governing the writ of *habeas corpus* under Missouri law establish procedures similar to the traditional common law writ. For example, **the writ merely allows a prisoner to inquire into the cause of his confinement**. A petition for *habeas corpus* relief under Missouri law is said to be **limited to determining the facial validity of confinement**, which is based on the record of the proceeding that resulted in the **confinement**.

*State ex rel. Nixon v. Jaynes*, 63 S.W.3d 210, 214 (Mo. banc 2001) (emphasis added) (internal citation omitted).

In *State ex rel. Aziz v. McCondichie*, the habeas petitioner was also released on parole while his case was pending in this Court. 132 S.W.3d 238, 239 (Mo. banc 2004). Although this Court noted that parole conditions "restrict a parolee's activities," it held the case was moot after the petitioner was released on parole. *Id.* at 240–41. While the principal opinion suggests Fleming may still be restrained of certain liberties because there are conditions of parole, he is no longer being physically held in a place of custody—i.e., he is no longer a prisoner inquiring into the cause of his confinement—which is what state habeas relief is intended to address. *See id.* There being no "validity of confinement" to determine after Fleming's release on parole, I would accordingly deny the petition as moot.

The principal opinion's reliance on *Nicholson v. State*, 524 S.W.2d 106 (Mo. banc 1975), *State v. Gray*, 406 S.W.2d 580 (Mo. 1966), and *Hyde v. Nelson*, 287 Mo. 130, 229 S.W. 200 (1921), is woefully misplaced. As the principal opinion recognizes, neither *Nicholson* nor *Gray* was a case in which a petitioner sought a writ of habeas corpus; rather, both concerned only the applicability of Rule 27.26 (the precursor to Rules 24.035 and 29.15). *Nicholson*, 524 S.W.2d at 108; *Gray*, 406 S.W.2d at 581. Moreover, *Hyde*, from which the principal opinion, *Nicholson*, and *Gray* all lift an isolated quote while ignoring its holding, clearly supports my view. In *Hyde*, this Court expressly held that although a person released on bail was subject to terms and conditions of bail and "constructively" in custody, he was still "at liberty and . . . one at liberty is not imprisoned" for purposes of the habeas statute. 229 S.W. at 202.

Additionally, the principal opinion erroneously relies on *Jones v. Cunningham*, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963), which was not based on the constitutional authority of the federal writ of habeas corpus, but rather was a matter of statutory interpretation of the relevant federal habeas provisions. *Id.* at 237–38, 243, 83 S.Ct. 373. In fact, many federal habeas cases involve interpretation of the federal statute governing the writ. That is why state supreme courts look to their own state constitutions and state statutes for guidance rather than to federal court decisions. The Supreme Court of South Dakota expressed my view very straightforwardly: "Our [state habeas] remedy extends only as far as the language used by our legislature allows, as federal decisions on the application of the federal habeas statute do not control the interpretation of our state habeas remedy." *Bostick v. Weber*, 692 N.W.2d 517, 521 (S.D. 2005).

In addition, I write separately to highlight the curious nature of the relief granted by the principal opinion. Having been released on parole during the pendency of this matter, Fleming amended his petition to seek discharge from parole rather than prison. The principal opinion purports to restore Fleming to his status as probationer, concluding that even though Fleming's probation term has expired, the circuit court can still initiate revocation proceedings.[5] As such, if the circuit court again chooses to revoke Fleming's probation, Fleming, currently released on parole, may be returned to prison. In other words, Fleming may ultimately be made worse off than had he not sought habeas relief.

The principal opinion also directs the circuit court to consider "alternative measures of punishment," citing to § 559.021.7, which provides that "[t]he court may modify or enlarge the conditions of probation at any time **prior to the expiration or termination of the probation term.**" (Emphasis added). But as the principal opinion properly recognizes, Fleming's term of probation has expired. Therefore, if the circuit court chooses not to revoke, it must discharge Fleming; it has no authority to continue Fleming on an expired term of probation for the purpose of imposing any alternative measures. The only way the circuit court could possibly impose alternative measures through conditions of probation is if the circuit court first revoked Fleming's probation and then placed him on a second term of probation with the new conditions. *See* § 559.036.5. Therein lies the paradox of the principal opinion. It suggests the circuit court may revoke only if it determines alternative measures to be inadequate. In fact, though, if the circuit court determined alternative measures were indeed adequate and appropriate, it could not impose those alternative measures *unless it revoked* and placed Fleming on a second term of probation. And, notably, if the circuit court chose that route, it could place Fleming on another five-year term of probation, *see* §§ 559.036.5, .016.1(1), meaning Fleming could be subjected to a longer term on probation than he currently has remaining on parole.[6] Again, Fleming may ultimately be made worse off than had he not sought habeas relief.

In my view, this Court does not have the authority and should not expand state habeas relief to petitioners not in custody.

---

**5.** When this Court has previously granted habeas relief based on the improper revocation of probation, the petitioner was still in prison and could be returned to an unexpired term

of probation. *See, e.g., Abel v. Wyrick*, 574 S.W.2d 411, 414–15, 421 (Mo. banc 1978).

**6.** Fleming is eligible for discharge from parole January 9, 2020.

Further, the anomalous and unintended outcomes that are possible under the rationale of the principal opinion are avoided if this Court simply followed its opinion in *Aziz* and the statutory limitations provided as to who may seek state habeas relief and reaffirmed that habeas corpus relief is available only to petitioners physically held in a place of custody.

Paul C. Wilson, Judge, dissenting

I would quash the writ for the reasons stated on pages 6–7 of the dissenting opinion of Judge Fischer.