

# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | |
|---|---|
| DAVID WOODY, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) WD87715 |
| | ) |
| PATRICK CLARK, JAY BETTIS, | ) |
| and RICHARD RIDDELL, | ) Filed: October 14, 2025 |
| | ) |
| Respondents. | ) |

**Appeal from the Circuit Court of Clinton County
The Honorable R. Brent Elliott, Judge**

**Before Division One: Gary D. Witt, P.J., and
Alok Ahuja and Karen King Mitchell, JJ.**

David Woody is the elected Clerk of the County Commission of Clinton County. He is also a member of the Missouri National Guard. Woody sued the members of the County Commission (collectively "the Commission") in the Circuit Court of Clinton County, alleging that he is entitled to continued payment of his Clerk's salary while deployed on active federal military duty for 400 days. The Commission moved for judgment on the pleadings, contending that Woody was entitled to payment of his salary for only 120 hours per federal fiscal year during his deployment. The circuit court granted the Commission's motion and entered judgment in its favor. Woody appeals. We affirm.

## Factual Background

On January 1, 2019 Woody took office as the elected Clerk of the County Commission. He was re-elected in November 2022 and began a second four-year term on January 1, 2023.

In November and December 2022, Woody received orders from the Adjutant General of the Missouri National Guard to report for training duty from January 18, 2023 through February 7, 2023. Then, on January 23, 2023, the Adjutant General ordered Woody "to active duty as a member of [his] Reserve Component Unit" in service of the United States, to support Operation Enduring Freedom (Spartan Shield). Woody's January 2023 orders indicated that his active-duty deployment would be for a period of 400 days beginning on February 9, 2023, "unless sooner released or extended by proper authority."

Woody notified the Commission of his deployment, and provided the Commission with a copy of his written orders. At a meeting on March 28, 2023, a majority of the Commission voted to pay Woody's salary as Clerk during his deployment for only 120 hours per federal fiscal year. The Commission determined to pay Woody his salary only for this limited time in reliance on § 105.270.1.[1]

Through an attorney, Woody advised the Commission that he believed he was entitled to payment of the full Clerk's salary for the entirety of his deployment under § 41.942.1. The Commission's position remained unchanged.

Woody then filed suit in the circuit court, seeking a declaration that he was entitled to the full Clerk's salary for the entirety of his deployment pursuant to

---

[1] Statutory citations refer to the 2016 edition of the Revised Statutes of Missouri, updated by the 2024 Supplement.

§ 41.942.1. Woody also sought damages for his lost salary and associated benefits, with interest.

Woody filed a motion for partial summary judgment on the issue of his entitlement to full compensation, and the Commission filed a motion for judgment on the pleadings. The circuit court denied Woody's summary judgment motion, and granted judgment on the pleadings in favor of the Commission. Woody appeals.

## Discussion

Woody asserts two Points on appeal, one challenging the circuit court's grant of the Commission's motion for judgment on the pleadings, and the other challenging the court's denial of his mirror-image summary judgment motion. Because we conclude that the circuit court properly granted judgment to the Commission, we need not separately address Woody's summary judgment motion.

"A court's grant of judgment on the pleadings is reviewed *de novo*." *BBX Cap. Corp. v. Scottsdale Ins. Co.*, 713 S.W.3d 590, 601 (Mo. App. W.D. 2025) (citation omitted). "The trial court's ruling is reviewed in order to decide 'whether the moving party is entitled to judgment as a matter of law on the face of the pleadings.'" *Id.* (citation omitted). "The position of a party moving for judgment on the pleadings is similar to that of a movant on a motion to dismiss; *i.e.*, assuming the facts pleaded by the opposite party to be true, these facts are, nevertheless, insufficient as a matter of law." *Id.* (citation omitted). "The well-pleaded facts of the non-moving party's pleading are treated as admitted for purposes of the motion." *Id.* (citation omitted).

3

Woody's appeal hinges on the interplay between two statutes: § 41.942.1 and § 105.270.1. Section 41.942.1 provides in relevant part:

> Notwithstanding the provisions of subsection 1 of section 105.270, any officer or employee of this state, . . . or of any county, . . . who is or may become a member of the National Guard or of any reserve component of the Armed Forces of the United States and who is engaged in the performance of duty in the service of the United States under competent orders for an extended and indefinite period of time, shall be entitled to leave of absence from his respective duties as a public officer or employee until such military service is completed without loss of position, seniority, accumulated leave, impairment of performance appraisal, pay status, work schedule including shift, working days and days off assigned to the officer or employee at the time leave commences, and any other right or benefit to which the officer or employee is entitled, and no retirement benefit shall be diminished or eliminated because of such service.

Section 41.942 became effective in 1991.

> Section 105.270.1 provides:

> All officers and employees of this state, . . . or of any county, . . . who are or may become members of the National Guard or of any reserve component of the Armed Forces of the United States, shall be entitled to leave of absence from their respective duties, without loss of time, pay, regular leave, impairment of efficiency rating, or of any other rights or benefits, to which otherwise entitled, for all periods of military services during which they are engaged in the performance of duty or training in the service of this state at the call of the governor and as ordered by the adjutant general without regard to length of time, and for all periods of military services during which they are engaged in the performance of duty in the service of the United States under competent orders for a period not to exceed a total of one hundred twenty hours in any federal fiscal year.

Section 105.270 was originally enacted in 1955. It was last amended in 2002.

The 2002 amendment changed the time period for which benefits continued

during federal deployment from "fifteen calendar days" to "a total of one hundred twenty hours in any federal fiscal year." *See* H.B. 1822, 91st Gen. Assembly, 2d Reg. Session, 2002 MO. LAWS 557, 557.

The Commission relied on § 105.270.1 to conclude that Woody would only be entitled to payment of his salary as the Commission's Clerk for a total of 120 hours per federal fiscal year. Woody, on the other hand, contends that § 41.942.1 requires the Commission to pay him his Clerk's salary for the entirety of his active-duty deployment.

"This Court's primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue." *C.S. v. Mo. State Hwy. Patrol Crim. Justice Info. Serv.,* 716 S.W.3d 264, 268 (Mo. 2025) (citation omitted).

> When determining the legislative intent of a statute, no portion of the statute is read in isolation, but rather the portions are read in context to harmonize all of the statute's provisions. This Court must give meaning to every word or phrase of the legislative enactment. When the words are clear, there is nothing to construe beyond applying the plain meaning of the law.
>
> . . . In the absence of a statutory definition, words will be given their plain and ordinary meaning as derived from the dictionary.

*State v. Heathcock*, 708 S.W.3d 163, 167 (Mo. 2025) (cleaned up).

Sections 41.942.1 and 105.702.1 address the same general subject matter: the rights and benefits available to State and county employees while serving as members of the Missouri National Guard or as members of reserve components of the United States military. "When 'two statutory provisions covering the same subject matter are unambiguous standing separately but are in conflict when

5

examined together, a reviewing court must attempt to harmonize them and give them both effect.'" *Earth Island Inst. v. Union Elec. Co.*, 456 S.W.3d 27, 33 (Mo. 2015) (quoting *South Metro. Fire Prot. Dist. v. City of Lee's Summit*, 278 S.W.3d 659, 666 (Mo. 2009)). To the extent of any irreconcilable conflict between §§ 41.942.1 and 105.270.1, § 41.942.1 will control, because § 41.942.1 states that it will apply "[n]otwithstanding the provisions of subsection 1 of section 105.270." *Id.* at 33-34 ("'to say that a statute applies "notwithstanding any other provision of the law" is to say that no other provisions of law can be held in conflict with it . . . . [T]he "Notwithstanding" clause does not create a conflict, but eliminates the conflict that would have occurred in the absence of the clause.'" (quoting *State ex rel. City of Jennings v. Riley*, 236 S.W.3d 630, 632 (Mo. 2007)).

Although §§ 41.942.1 and 105.270.1 address the same general subject matter, and contain similar wording, there are important differences between the two statutes. First, § 105.270.1 applies to members of the National Guard while they are deployed "in the service of this state at the call of the governor," as well as when they are deployed "in the service of the United States under competent orders." When deployed in *State* service, § 105.270.1 provides for the retention of employment-related rights and benefits "without regard to the length of time"; for *federal* service, the deployed Guard member retains their employment benefits "for a period not to exceed a total of one hundred twenty hours in any federal fiscal year."

Section 41.942.1 applies to a more narrow category of federal deployments: when the Guard member is acting "in the service of the United States under competent orders *for an extended and indefinite period of time*." (Emphasis

6

added.)  Moreover, § 41.942.1 does not limit the period of time during which a deployed Guard member retains their employment rights and benefits; instead, it provides that the Guard member retains those benefits "until such military service is completed."

Besides differences in the *types of deployments* they cover, and the *length of time* during which employment benefits continue, the two statutes also differ in the *types of employment benefits* a Guard member retains.  Section 41.942.1 provides that a deployed Guard member is entitled to a leave of absence

> without loss of position, seniority, accumulated leave, impairment of performance appraisal, pay status, work schedule including shift, working days and days off assigned to the officer or employee at the time leave commences, and any other right or benefit to which the officer or employee is entitled . . . .

Section 105.270.1, on the other hand, provides for a leave of absence

> without loss of time, pay, regular leave, impairment of efficiency rating, or of any other rights or benefits, to which otherwise entitled . . . .

For a series of reasons, we conclude that § 41.942.1 only preserves a deployed Guard member's compensation rate and terms; it does <u>not</u> promise a Guard member continued *payment* of compensation during an extended and indefinite federal deployment.  First, unlike § 105.270.1, which protects servicemembers from "loss of . . . pay," § 41.942.1 only shields the Guard member from "loss of . . . pay *status*." (Emphasis added.)  Woody argues that "'pay status' in Section 41.942.1 is essentially indistinguishable from 'pay' in Section 105.270.1."  We disagree.  The terms are different, and we must ascribe significance to the General Assembly's use of different terminology in the two statutes.  As the Eastern District has explained, "[w]e presume that the legislature acts with

7

knowledge of statutes involving similar or related subject matters and that it acts intentionally when it includes language in one section but omits such language from another." *Selleck v. Keith M. Evans Ins., Inc.*, 535 S.W.3d 779, 784 (Mo. App. E.D. 2017) (citations omitted); *accord*, *Jefferson ex rel. Jefferson v. Mo. Baptist Med. Ctr.*, 447 S.W.3d 701, 708 (Mo. App. E.D. 2014) ("the legislature's use of different terms [in different statutory provisions] is presumed to be intentional and for a particular purpose" (cleaned up)). In this case, it is undeniable that the General Assembly was aware that the two statutes address similar subject matter, since § 41.942.1 actually cross-references § 105.270. Given the legislature's explicit recognition of the relationship between the two statutes, the use of different language to describe the employment benefits the service member retains is significant. Woody's argument asks us to ignore the legislature's use of the term "status" in § 41.942.1, contrary to the principle that, "[b]ecause each word of a statute is presumed to have been included for a particular purpose, an interpretation rendering statutory language redundant or without meaning is disfavored." *Rasmussen v. Ill. Cas. Co.*, 628 S.W.3d 166, 175 (Mo. App. W.D. 2021) (cleaned up).

The use of the term "status" in § 41.942.1 indicates that the legislature intended to preserve a deployed Guard member's compensation terms, but not their right to actually *receive compensation* while on leave. "Status" is defined in the relevant sense to mean "a *position* or *rank* in relation to others"; "*relative rank* in a hierarchy of prestige"; or "the *condition* . . . of a person that determines the nature of his legal personality, his legal capacities, and the nature of the legal relations to the state or to other persons into which he may enter." *Status*,

WEBSTER'S THIRD NEW INT'L DICTIONARY (unabridged ed. 2002) (emphasis added); *see also Status*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/status (last visited Oct. 7, 2025) (providing similar definition).  Thus, "pay status" is naturally read to refer to a Guard members' pay position or rank (meaning, their compensation rate, terms and conditions), rather than actual *payment* of compensation – particularly when "pay status" in § 41.942.1 is contrasted with the term "pay" in § 105.270.1.

In addition, two related canons of statutory construction also support reading "pay status" to refer to the terms of an employee's compensation:  the principle of "*noscitur a sociis*" (meaning, that "a word [or phrase] is known by the company it keeps"[2]); and the "*ejusdem generis*" principle (under which "context is important 'in determining the scope and extent of more general words'"[3]).  In § 41.942.1, the phrase "pay status" is surrounded by other terms which indicate that a deployed State employee is entitled to maintain the terms and conditions of their existing employment, as they existed before the deployment began, until the deployment concludes.  Thus, besides "pay status," the employment rights and benefits protected by § 41.942.1 include the employee's "position, seniority, accumulated leave, impairment of performance appraisal, . . . work schedule including shift, [and] working days and days off."  Like "pay status," these other employment rights and benefits are matters of rank, position and status.

---

[2]  *State ex rel. Fleming v. Mo. Bd. of Prob. & Parole*, 515 S.W.3d 224, 235 (Mo. 2017) (quoting *Union Elec. Co. v. Dir. of Revenue*, 425 S.W.3d 118, 122 (Mo. 2014)).

[3]  *Circuit City Stores, Inc. v. Dir. of Revenue*, 438 S.W.3d 397, 401 (Mo. 2014) (quoting *Std. Ops., Inc. v. Montague*, 758 S.W.2d 442, 444 (Mo. 1988)).

Throughout his briefing, Woody emphasizes that, besides protecting a deployed Guard member's "pay status" and other listed rights and benefits, § 41.942.1 also protects "any other right or benefit to which the officer or employee is entitled." But this concluding phrase cannot expand the *type* of employment rights and benefits which § 41.942.1 preserves. Instead, "[i]n accordance with that rule of construction [*i.e.*, *ejusdem generis*], '[t]he words "other" or "any other," following an enumeration of particular classes, are . . . to be read as "other such like," and to include only others of the like kind or character.'" *City of Grandview v. Madison*, 693 S.W.2d 118, 119 n.2 (Mo. App. W.D. 1985) (quoting *State v. Eckhardt*, 133 S.W. 321, 321–22 (Mo. 1910)); *accord*, *Hammett v. Kansas City*, 173 S.W.2d 70, 75–76 (Mo. 1943). Thus, the reference in § 41.942.1 to "any other right or benefit" includes only other terms and conditions of employment similar to the ones specifically listed in the statute.

Accordingly, we conclude that § 41.942.1 only preserved the terms of Woody's compensation as Clerk of the County Commission, not his right to *ongoing payment of salary* while on leave. Section 41.942.1 does not give members of the Missouri National Guard the right to a *paid* leave of absence for the entirety of an extended and indefinite federal deployment. The circuit court properly granted judgment on the pleadings to the Commission.

We conclude by emphasizing several issues which this opinion does *not* address. First, because Woody's reliance on § 41.942.1 fails for other reasons, it is unnecessary for this Court to decide whether his active-duty deployment was "for an extended and indefinite period of time," as required to trigger § 41.942.1's protections. Second, because the Commission does not contest the matter, we

10

need not decide whether § 105.270.1 *required* the Commission to pay Woody's salary for 120 hours per-year during his deployments. In addition, because Woody's petition, and his appellate briefing, focused on the Commission's refusal to *pay his salary* for more than 120 hours per federal fiscal year during his deployment, we do not address the effect of the Commission's actions on any *other* employment benefits Woody may have enjoyed, such as retirement benefits or health insurance. Finally, although the Commission cited § 41.470 to justify limiting Woody's compensation before he filed suit, neither party discussed that statute in their motions practice in the circuit court, or on appeal; this opinion takes no position on the potential relevance of § 41.470 to the present dispute.

## Conclusion

The judgment of the circuit court is affirmed.

_____
Alok Ahuja, Judge

All concur.