Lisa White Hardwick, Presiding Judge
This is an original proceeding in certiorari to review the record in the case of Embrey v. Pash , Circuit Court of DeKalb County, Missouri, Case No. 17DKCC00073. In that case, the Honorable Bart Spear ("the habeas court") issued a writ of habeas corpus to Donnie Embrey ("Embrey") on October 5, 2017. Following the issuance of the writ of habeas corpus, the Attorney General of the State of Missouri ("Attorney General") filed a petition for writ of certiorari in this court, which we granted as a matter of right. State ex rel. Nixon v. Kelly , 58 S.W.3d 513, 516 (Mo. banc 2001). Because we conclude that the habeas court did not abuse its discretion in granting the writ of habeas corpus, we refuse to quash the record of the habeas court.
FACTUAL AND PROCEDURAL HISTORY
In September 2013, Embrey pleaded guilty to one count of financial exploitation of the elderly. In January 2014, the court sentenced him to a term of 25 years in prison, but the court retained jurisdiction pursuant to Section 559.115[1] and ordered him to serve 120 days of shock incarceration in the Department of Corrections. After Embrey successfully completed the 120-day program, the court placed him on *270 probation for a period of five years, beginning on May 22, 2014. One of the conditions of Embrey's probation was to pay restitution in the amount of $242,000, together with interest of nine percent per annum. In its judgment, the sentencing court ordered that the monthly amount of restitution initially be set by Embrey's parole officer and continue in that amount unless modified by the court. The record does not reflect that Embrey's parole officer set a monthly amount for Embrey to pay.
On August 7, 2014, the State filed a motion to revoke Embrey's probation. The ground stated for revocation was that Embrey failed to pay court-ordered restitution. On September 4, 2014, the sentencing court held a hearing. No evidence was presented, but counsel for the State and Embrey offered arguments. Embrey's counsel explained that Embrey had taken a job in Oklahoma but voluntarily terminated it after the employer refused to deduct taxes from Embrey's paycheck, which was one of the court's requirements. After leaving the job in Oklahoma, Embrey returned to St. Joseph to work at a pork plant. At the time of the September hearing, he was still working at the pork plant but had acquired a different job that he planned to start shortly after the hearing. Embrey's counsel asked the court's permission to allow Embrey to work for himself in addition to working for an employer, but the court would not allow it because of his criminal history of stealing from people who hired him when he was self-employed. The court set Embrey's monthly restitution payment at $4000 and scheduled a probation violation hearing for October 2, 2014.
On October 2, 2014, Embrey waived his right to a probation violation hearing and admitted that he violated a condition of his probation by failing to pay restitution as ordered. After this hearing, the court ordered that Embrey's probation be continued and ordered additional conditions of his probation. On November 20, 2014, the sentencing court, on its own motion, issued a notice of probation violation alleging that Embrey had violated his probation by failing to pay restitution.
The court held another probation violation hearing on December 18, 2014. The only evidence adduced by the State concerning Embrey's nonpayment of restitution was its provision of a printout, which Embrey conceded was accurate, showing that he had paid a total of $6200 in restitution since the October hearing. According to the State, as of the date of the December 2014 hearing, Embrey owed approximately $215,300 of the original restitution amount of $242,000.
Embrey offered evidence of his current employment with Blue Sun St. Joe Refining. The company's human resources manager testified that Embrey began working as a full-time temporary employee at an entry level wage of $11 per hour on October 14, 2014. Embrey worked full time and overtime, which meant that he worked 12-hour shifts. The manager testified that, after Embrey's probationary period ended in mid-January 2015, he anticipated that Embrey would begin making $12 to $14 per hour.
The court also heard arguments from both counsel. The prosecutor argued that Embrey owed "a massive amount of restitution"; that he did not know how Embrey could "possibly pay this restitution at $4,800 a month during the course of his probation"; and that it was not "reasonable to believe" that Embrey could pay it. In response, Embrey's counsel noted that Embrey had paid over $27,000 during the past 16 months, which included the four months in which he was serving his 120-day shock incarceration. Embrey's counsel *271 also asserted that Embrey was using his income solely to pay restitution, while his wife was working two jobs to support them. Embrey's counsel requested that the court continue to allow Embrey to make restitution averaging approximately $2000 per month for the entire period of his probation, consider extending his probation beyond five years, and if, at the end of the probation extension the restitution was not paid, revoke his probation and send him to prison at that time. According to Embrey's counsel, Embrey indicated that he would sell "everything they own" and family members would assist him if he was unable to pay his restitution at the end of an extended probation term.
The sentencing court stated that, if Embrey were to continue to pay restitution in the amount of $2000 per month, it would take him nine years to pay off the entire amount owed, and "there's no law in the world that allows anybody to be on probation for nine years." The court also said that, if Embrey could really pay only $2000 per month, then "somebody" should "pay a lump sum right now of $100,000 or whatever it would be and then he pays the $2,000 a month over that time period." At the close of the hearing, the sentencing court revoked Embrey's probation, stating:
All right. In this case, the Court finds that the restitution has not been paid as directed. As I indicated, Mr. Embrey was ordered to pay $4,000 per month as of October; that in October, it was shy by $200. In November, that was shy by $2,400. And here, as of December 18th, it's shy by $3,200.
The Court find there's no reasonable alternative to ordering the revocation of the probation in this case. That restitution is not going to get paid. Mr. Embrey's background of stealing from folks would indicate that this is just something that he's always done and the Court thought maybe this time around would make a difference if he were placed on some sort of probation, because he'd been paroled previously, and had served sentences and it did not work.
The sentencing court's docket entry from the December 2014 hearing read:
COURT FINDS DEFENDANT HAS NOT PAID RESTITUTION AS DIRECTED[.] HE WAS ORDERE[D] TO PAY $4,000.00 PER MONTH AS OF OCTOBER AND HAS NOT PAID THAT AMOUNT-BARELY 50%. THE COURT FINDS NO REASONABLE ALTERNATIVE TO REVOCATION AND ORDERS THE 25 YEAR SENTENCE EXECUTED.
The sentencing court subsequently entered an order waiving all of Embrey's outstanding court costs except for those pertaining to the Crime Victim's Compensation Fund.
Almost three years later, in October 2017, Embrey filed a petition for writ of habeas corpus in the DeKalb County Circuit Court. In his petition, he alleged that the sentencing court improperly revoked his probation because, contrary to the United States Supreme Court's opinion in Bearden v. Georgia , 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), and the Missouri Supreme Court's opinion in State ex rel. Fleming v. Missouri Board of Probation and Parole , 515 S.W.3d 224 (Mo. banc 2017), the sentencing court failed to make the requisite inquiries and findings concerning Embrey's reasons for failing to pay, and the sentencing court failed to consider alternatives to imprisonment.[2] After *272 considering the petition for writ of habeas corpus, the Attorney General's response, Embrey's reply, and the habeas hearing, the habeas court granted Embrey habeas relief on the basis that the record did not show that the sentencing court inquired and made findings as to the reasons for Embrey's failure to pay, including whether he willfully refused to pay or failed to make bona fide efforts to acquire the resources to pay. Therefore, the court concluded that the probation revocation did not comply with the necessary constitutional requirements to revoke probation for nonpayment of restitution.
The habeas court issued a writ of habeas corpus, which ordered Embrey discharged from his sentence of imprisonment, released from the custody of the Superintendent of Crossroads Correctional Center, and restored to his status as a probationer under the sentencing court's orders setting the terms and conditions of his probation. The habeas court granted the Attorney General's request for a stay of the proceedings until the final resolution of certiorari litigation in this court and the Missouri Supreme Court.
The Attorney General filed a petition for writ of certiorari in this court seeking review of the habeas record. We issued a writ of certiorari and ordered the DeKalb County Circuit Court to return the record of the habeas proceedings to this court for review. Embrey subsequently filed a motion to vacate the habeas court's stay of the proceedings pending final resolution of the certiorari litigation.
STANDARD OF REVIEW
Because there is no right of appeal from the granting of a writ of habeas corpus, review is by writ of certiorari. Kelly , 58 S.W.3d at 516. Certiorari is "available to correct [habeas] judgments that are in excess or an abuse of jurisdiction, and that are not otherwise reviewable on appeal." State ex rel. Koster v. Oxenhandler , 491 S.W.3d 576, 589 (Mo. App. 2016) (quoting State ex rel. Nixon v. Sprick , 59 S.W.3d 515, 518 (Mo. banc 2001) ). "Our review is limited to whether the habeas court exceeded the bounds of its authority to grant habeas relief or abused its discretion in issuing the writ of habeas corpus." State ex rel. Koster v. Green , 388 S.W.3d 603, 606 (Mo. App. 2012).
We do not review the habeas court's findings of fact. Id. Instead, our review is limited to questions of law that are presented in the record before the habeas court. Id. "However, the sufficiency of the evidence to support the writ of habeas corpus as a whole is a question of law subject to certiorari review." Oxenhandler , 491 S.W.3d at 590. In reviewing the sufficiency of the evidence, "[w]e assume the habeas court made findings of fact warranted by the evidence sufficient to sustain the habeas judgment." Id. (quoting State ex rel. Shartel v. Skinker , 324 Mo. 955, 25 S.W.2d 472, 478 (Mo. banc 1930) ). "[E]very lawful intendment will be made in favor of the determination and the regularity of the proceedings below." Id. (quoting Skinker , 25 S.W.2d at 478 ). We will find that the habeas court abused its discretion only if its "ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." Green , 388 S.W.3d at 606-07 (quoting *273 State v. Stewart , 313 S.W.3d 661, 665 (Mo. banc 2010) ). "Upon the completion of our review, our options are to either quash the writ or [to] uphold the actions of the habeas court in whole or in part." Id. at 607 (internal quotation marks and citations omitted).
ANALYSIS
In his petition for writ of certiorari, the Attorney General contends the habeas court abused its discretion in issuing the writ because the record from the sentencing court clearly supports the sentencing court's decision to revoke Embrey's probation for failure to pay restitution.
"[I]f the State determines a fine or restitution to be the appropriate and adequate penalty for the crime, it may not thereafter imprison a person solely because he lacked the resources to pay it." Bearden , 461 U.S. at 667-68, 103 S.Ct. 2064. Rather, in probation revocation proceedings, the sentencing court "must inquire into the reasons for the failure to pay." Id. at 672, 103 S.Ct. 2064. As the Court in Bearden explained:
If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternate measures of punishment other than imprisonment. Only if alternate measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay. To do otherwise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment.
Id. at 672-73, 103 S.Ct. 2064 (footnote omitted). Hence, before the sentencing court may revoke probation for failure to pay a fine or restitution, the court must determine whether the defendant refused to pay or failed to make sufficient bona fide efforts to acquire the resources to pay. Id. If the court determines that the defendant did make bona fide efforts to pay, then the court must consider alternate measures of punishment other than imprisonment. Id. In Bearden , because neither the sentencing court's findings nor its record justified a determination that the defendant had not made sufficient bona fide efforts to find work to pay his fine, the Court remanded the case so the sentencing court could make such a determination. Id. at 674, 103 S.Ct. 2064.
In Fleming , the Missouri Supreme Court reiterated Bearden 's holding that, before probation can be revoked for failing to pay amounts due as a condition of probation, the sentencing court must inquire into and make findings regarding the reasons for the defendant's failure to pay. 515 S.W.3d at 225. The sentencing court in Fleming revoked the defendant's probation after he failed to pay his court costs within the first three years of his probation. Id. at 227. Although there was "substantial evidence" in the record as to why the defendant had failed to pay his court costs, including a lack of resources and mental health issues, the sentencing court relied exclusively on the defendant's admission that he violated his probation by failing to pay as the reason for revoking his probation. Id. at 230-32. The Supreme Court granted the defendant habeas relief after finding that the sentencing court failed to comply with Bearden 's directives *274 that, "prior to revocation, a court must inquire as to the reasons for failure to pay outstanding court costs and, if the failure to pay was not willful, must consider whether the probation conditions already completed or other alternative measures of punishment besides imprisonment adequately satisfy the state's interests in punishment and deterrence." Id. at 230.
In this case, the habeas court granted Embrey habeas relief after determining that the record did not show that the sentencing court inquired and made findings as to the reasons for Embrey's failure to pay, including whether he willfully refused to pay or failed to make bona fide efforts to acquire the resources to pay, before revoking his probation during the December 2014 hearing.[3] Specifically, the habeas court found that there was nothing in the record from the December 2014 hearing indicating what circumstances had changed between the October 2014 hearing, when the sentencing court found that Embrey had violated his probation for nonpayment of restitution but continued him on probation with additional conditions, and the December 2014 hearing, when the court revoked his probation for nonpayment of restitution. The habeas court reasoned that, to continue Embrey on probation in October 2014, the sentencing court would have had to have believed that his nonpayment at that time was not willful, that he was making bona fide efforts to acquire the resources to pay, or that there were alternatives to imprisonment. The sentencing court then imprisoned Embrey for nonpayment of restitution in December 2014 but did not explain what circumstances had changed during the two and a half months between the two hearings, beyond Embrey's failure to make payments in full, to cause the court to believe that he now was willfully refusing to pay or was not making bona fide efforts to acquire the resources to pay.
The record supports the habeas court's determination that there was nothing in the record showing that the sentencing court inquired and made findings as to these issues. The evidence before the sentencing court at the December 2014 hearing was simply that: (1) between the October 2014 hearing and the December 2014 hearing, Embrey had paid only $6200 of the $12,000 in restitution that he owed for those three months; and (2) Embrey had been employed at Blue Sun St. Joe Refining since October 14, 2014, was working 12-hour shifts that consisted of both full time and overtime, and was making $12 to $14 an hour. There was no evidence or argument as to Embrey's willingness to pay the full amount of restitution during that time or whether his efforts to pay the full amount were bona fide. Instead, the State's argument for revoking Embrey's probation was that it was "going to be very, very difficult for anyone to pay this amount of restitution per month" and that it was not "reasonable to believe" that he could pay this "massive amount of restitution."
The habeas court concluded that stating that Embrey could not pay was "the polar opposite from averring [he] willfully refused to pay and did not make bona fide efforts" to pay. We agree. As the habeas court noted, although Embrey was not indigent like the defendant in Fleming , he *275 was not wealthy, either, as his monthly income was approximately $2000.[4] This supports the habeas court's finding that, given Embrey's income, his payment of $6200 towards the $12,000 he owed between October and December 2014 was "not insubstantial." Moreover, we agree with the habeas court's assertion that the sentencing court's order waiving costs after it revoked Embrey's probation "flies in the face" of any argument that Embrey had the ability to pay but was willfully refusing to do so. Although the sentencing court did state that "somebody" should make a lump sum payment of $100,000 on Embrey's behalf so that he could make monthly payments of only $2000 going forward, the record supports the habeas court's finding that there was no evidence that anyone was willing or able to make such a payment at that time. Additionally, the sentencing court stated that "Mr. Embrey's background of stealing from folks would indicate that this is just something that he's always done." We agree with the habeas court's finding that this statement was insufficient to support revoking Embrey's probation, as the sentencing court did not explain, and the record does not indicate, why Embrey's prior criminal record caused the sentencing court to believe that Embrey was now willfully refusing to pay or failing to make sufficient efforts to pay his restitution.
The record supports the habeas court's conclusion that the sentencing court did not inquire and make findings as to whether Embrey willfully refused to pay the full restitution amount owed or failed to make bona fide efforts to do so before it revoked his probation. Therefore, the habeas court did not abuse its discretion in granting Embrey's petition for writ of habeas corpus.
CONCLUSION
We refuse to quash the record of the habeas court. Per the writ of habeas corpus, Embrey is discharged from his sentence of imprisonment, released from the custody of the Superintendent of Crossroads Correctional Center, and restored to his status as a probationer under the sentencing court's orders setting the terms and conditions of his probation. We deny Embrey's motion to vacate the habeas court's stay of the proceedings pending final resolution of the certiorari litigation.
All concur.

All statutory references are to the Revised Statutes of Missouri 2016.

Embrey's petition for writ of habeas corpus was the appropriate vehicle to assert his challenges to the probation revocation. Habeas corpus proceedings are "properly invoked to challenge an improper probation revocation." State ex rel. Fleming v. Mo. Bd. of Prob. & Parole , 515 S.W.3d 224, 229 (Mo. banc 2017) (citation omitted). "An attack on a probation ruling does not constitute a challenge to a sentence and is, therefore, beyond the scope of a Rule 24.035 proceeding." Prewitt v. State , 191 S.W.3d 709, 711 (Mo. App. 2006) (citing Green v. State , 494 S.W.2d 356, 357 (Mo. banc 1973) ).

The habeas court correctly noted that the sentencing court's failure to make specific written findings of its reasons for revoking Embrey's probation was not a fatal defect. This is because "the due process rights of a probationer are satisfied 'if the record of the proceedings clearly shows what reasoning and evidence were relied upon to revoke probation.' " Fleming , 515 S.W.3d at 232 (quoting Abel v. Wyrick , 574 S.W.2d 411, 420 (Mo. banc 1978) ).

The habeas court correctly found that there was no evidence or argument that Embrey was willfully underemployed, and the sentencing court's statements do not indicate that it made such a finding.