**MODIFIED 3/26/19**



# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI ex rel. | ) | |
| ERIC S. SCHMITT, | ) | |
| | ) | |
| Relator, | ) | |
| | ) | |
| v. | ) | **WD82447** |
| | ) | |
| THE HONORABLE SCOTT A. HAYES, | ) | **OPINION FILED:** |
| Circuit Judge of Randolph County, | ) | **February 26, 2019** |
| | ) | |
| and | ) | |
| | ) | |
| MICHELLE CHAPMAN, Circuit Clerk, | ) | |
| Randolph County Circuit Court, | ) | |
| | ) | |
| Respondents. | ) | |

## ORIGINAL PROCEEDING ON PETITION FOR WRIT OF CERTIORARI

Before Writ Division:  Mark D. Pfeiffer, Presiding Judge, and
Thomas H. Newton and Anthony Rex Gabbert, Judges

This is an original proceeding in certiorari to review the record in the case of *Cole v. Minor*, Circuit Court of Randolph County, Missouri ("habeas court"), Case No. 18RA-CV00296. In that case, the Honorable Scott A. Hayes issued a writ of habeas corpus to Vance A. Cole ("Cole").  Following the issuance of the writ of habeas corpus, Eric S. Schmitt, the Attorney General of the State of Missouri ("Attorney General"), filed a petition for writ of certiorari in this court, which we granted as a matter of right.  *See State ex rel. Nixon v. Kelly*, 58 S.W.3d 513,

516 (Mo. banc 2001) ("When the Attorney General seeks a writ of certiorari, the writ issues as a matter of course and of right, so that an appellate court can review the propriety of the habeas court's grant of the writ." (internal quotation marks omitted) (footnote omitted)). Because we conclude that the habeas court did not abuse its discretion in granting the writ of habeas corpus, we refuse to quash the record of the habeas court.[1]

### Factual and Procedural History

On April 29, 2013, in *State v. Cole*, Case No. 12CR-CR00131, Cole pleaded guilty to one count of the class C felony of first-degree tampering with a motor vehicle and one count of the class A misdemeanor of stealing. The Circuit Court of Carroll County, Missouri ("sentencing court"), sentenced Cole as a prior and persistent felony offender to ten years' imprisonment for the tampering charge and a concurrent thirty-day sentence, with credit for time served, for the stealing charge. The sentencing court suspended execution of the sentence and placed Cole on probation for five years. Cole's probation began on April 29, 2013, and had an original expiration date of April 29, 2018.

After Cole's probation term began, he violated his probation multiple times, though no motion to revoke or suspend probation was filed at any time prior to February 2016. In fact, no hearing was requested in response to any of these violation reports prior to February 2016.[2] However, in October 2015, the Board of Probation and Parole ("Board") did request a hearing, for the purpose of discussing *unpaid court costs*. The sentencing court held a hearing on October 28, 2015. Cole was present at the hearing and waived counsel. A representative of the

---

[1] "'In certiorari, this Court is limited to either quashing or not quashing the record of the lower court.'" *State ex rel. Koster v. McElwain*, 340 S.W.3d 221, 227 n.3 (Mo. App. W.D. 2011) (quoting *State ex rel. Nixon v. Jaynes*, 61 S.W.3d 243, 246 n.1 (Mo. banc 2001)). "An appellate opinion quashing or not quashing the record of a habeas court does not, strictly, affirm or deny the writ of habeas corpus, and thus does not implicate Rule 91.04(a)(4) or Rule 91.22." *Id.*

[2] At the October 28, 2015 hearing, the sentencing court even noted that it was "interesting" that no request had been made at any time seeking a hearing as to any of the violation reports.

Board informed the sentencing court that Cole was "eligible for the earned compliance credits" ("ECC") and that his ECC discharge date was February 2016.

Of relevance, there was no discussion at this time about the State seeking to suspend or revoke Cole's probation based upon any previous probation violations; nor did the sentencing court announce any intention that the court intended to suspend or revoke probation due to any probation violations. In fact, the *only* subject matter discussed at the hearing was the payment of court costs.[3] Cole admitted to the sentencing court that he was in arrears on payment of court costs and would not be able to complete payment of the court costs prior to February 2016. The sentencing court announced:

> . . . [Cole has] admitted the violation for not paying court costs as originally ordered. I'm going to find that those unpaid costs are restitution[4] and order that you shall not have your earned compliance credits applied until restitution is paid.

After February 2016, Cole engaged in conduct that violated his original probation terms, the State sought to revoke Cole's probation and, on January 25, 2017, a revocation hearing was held, at which Cole admitted violating the conditions of his original probation. After accepting Cole's admission and considering the alternatives to revocation, the sentencing court revoked Cole's probation and ordered his sentence executed.

---

[3] Of note, some of these "court costs" were related to board bills, and the Attorney General has recently taken the position in an amicus brief filed in a case pending before the Missouri Supreme Court, *Richey v. State*, SC97604, that "Missouri law does not authorize the taxation of debt incurred under § 221.070, RSMo [board bills], as 'court costs.'" Brief of *Amicus Curiae* the Missouri Attorney General 7. In the same amicus brief, the Attorney General likened the practice of circuit courts threatening criminal punishment repercussions to defendants who fail to pay board bills as "excessively harsh attempts to extract jail debt from inmates of limited means" and "the characterization of jail debt as 'court costs' can lead to abusive debt collection practices that infringe upon Missourians' constitutional rights." *Id.* at 26, 27.

[4] The sentencing court's attempt to re-categorize "court costs" as "court-ordered restitution" contemplated by Chapter 559, RSMo, is not authorized. "Any person who has been found guilty of or has pled guilty to an offense may be ordered by the court to make restitution *to the victim* for the victim's losses due to such offense." § 559.105.1. "The plain language of section 559.105.1 limits the authority of a trial court to require restitution as a condition of probation by restricting restitution only to 'the victim's losses due to such offense.'" *State ex rel. Bowman v. Inman*, 516 S.W.3d 367, 369 (Mo. banc 2017). Simply put, there is no statutory authority for a trial court to categorize "court costs" as "restitution."

On March 6, 2018, Cole filed a petition for a writ of habeas corpus in the Circuit Court of Randolph County, Missouri ("habeas court"), requesting that he be released from the sentence in *State v. Cole* because his probation period for the class C felony of first-degree tampering with a motor vehicle had expired in February 2016. Cole argued that he was being illegally detained by the Department of Corrections because he was entitled to receive ECC pursuant to section 217.703,[5] and with his ECC, his probation expired by operation of law on February 29, 2016. He argued that when a probation term ends, so does the court's authority over the case; therefore, the sentencing court exceeded its authority when it revoked his probation on January 25, 2017.

In response, the State argued that section 217.703.8 prohibited a petitioner from challenging the award of ECC in any motion for post-conviction relief, including an application for a writ of habeas corpus filed after a probation revocation. The State also contended that Cole invited any error in ECC calculation when he agreed[6] to have his court costs declared restitution and his ECC discharge date suspended. The State further argued that the calculation of ECC is an administrative function of the Board (§ 217.703.9); thus, Cole's only avenue to challenge the ECC calculation was to seek a writ of mandamus compelling the Board to perform its duty of calculation while he was on probation, or a writ of prohibition seeking to prevent his revocation before the error was corrected.

---

[5] All statutory references are to the REVISED STATUTES OF MISSOURI 2000, as updated through the 2012 Cumulative Supplement.

[6] At the October 2015 hearing, during colloquy with Cole (who was unrepresented by counsel at this hearing), Cole responded to the sentencing court's suggestion that it was going to declare his court costs as restitution and suspend his ECC: "I think that's fair." The sentencing court did not deem Cole's statement a stipulation or waiver of rights, but only confirmed that Cole "admitted the violation for not paying court costs." Irrespective, as we explain in our ruling today, the statutorily relevant undisputed fact is that neither the State, the Board, nor the sentencing court ever sought, or announced an intention, to suspend or revoke Cole's *probation* prior to February 2016.

4

On January 8, 2019, the habeas court issued its judgment, granting Cole's petition for writ of habeas corpus and ordering that Cole be released from confinement, discharged from probation, and relieved from execution of his sentence. The habeas court concluded that:

- section 217.703 (pre-2018) governs ECC and mandates that the Board shall award earned compliance credits to an offender who is in compliance with the terms of his probation;

- section 217.703 does not grant the sentencing court authority to deny a probationer credit under the statute based on the failure to pay court costs;

- no new violation reports were filed until after Cole's ECC discharge date in February 2016;

- with the application of ECC, Cole's term of probation expired in February 2016;

- the sentencing court did not have the authority under section 559.036.8 to revoke probation after a probation term ended because it did not manifest its intention to revoke Cole's probation prior to February 2016, nor did it make every reasonable effort to conduct any such revocation hearing prior to February 2016;

- the sentencing court was without authority to revoke Cole's probation on January 25, 2017.

On January 9, 2019, the State filed a petition for writ of certiorari in this court, requesting that this court review and quash the record of the habeas court that issued the January 8, 2019 ruling granting Cole a writ of habeas corpus. On the same date, this court granted the preliminary writ of certiorari, ordered a stay of Cole's release pending a review of the issues raised in the habeas action, and ordered the Circuit Clerk of the Circuit Court of Randolph County to return the record of the habeas corpus proceedings to this court for review.[7]

---

[7] "A writ of certiorari requires an inferior court to produce a certified record of a particular case for review for irregularities." *McElwain*, 340 S.W.3d at 231.

**Standard of Review**

"Because there is no right of appeal from the granting of a writ of habeas corpus, review is by writ of certiorari." *State ex rel. Hawley v. Spear*, 544 S.W.3d 267, 272 (Mo. App. W.D. 2018). "Certiorari is available to correct [habeas] judgments that are in excess or an abuse of jurisdiction, and that are not otherwise reviewable on appeal." *Id.* (internal quotation marks omitted). "Our review is limited to whether the habeas court exceeded the bounds of its authority to grant habeas relief *or* abused its discretion in issuing the writ of habeas corpus." *Id.* (internal quotation marks omitted).

This court does not review the habeas court's findings of fact. *Id.* "Instead, our review is limited to questions of law that are presented in the record before the habeas court." *Id.* "However, the sufficiency of the evidence to support the writ of habeas corpus as a whole is a question of law subject to certiorari review." *Id.* (internal quotation marks omitted). "In reviewing the sufficiency of the evidence, [w]e assume the habeas court made findings of fact warranted by the evidence sufficient to sustain the habeas judgment." *Id.* (internal quotation marks omitted). "[E]very lawful intendment will be made in favor of the determination and the regularity of the proceedings below." *Id.* (internal quotation marks omitted). "We will find that the habeas court abused its discretion only if its ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.* (internal quotation marks omitted). "Upon the completion of our review, our options are to either quash the writ or [to] uphold the actions of the habeas court in whole or in part." *Id.* at 273 (internal quotation marks omitted).

**Analysis**

In the Attorney General's petition for writ of certiorari, he contends that the habeas court abused its discretion in issuing the writ because: (1) under the doctrine of self-invited error, Cole

6

waived any right to an earlier ECC discharge date; and (2) under Missouri law (§ 217.703.8), an offender may not challenge the award or rescission of ECC in a petition for habeas corpus relief.

## Self-Invited Error

First, the Attorney General argues that the habeas court acted beyond its authority and abused its discretion when it granted habeas relief because Cole was not entitled to relief under the doctrine of self-invited error. The Attorney General contends that Cole expressly waived any right to an earlier ECC discharge date when, in response to the sentencing court announcing its plan to classify "court costs" as "restitution" and "suspend ECC," Cole, *pro se*, stated: "I think that's fair." While we conclude this colloquy is hardly an "invitation" to the sentencing court to act in excess of its statutory authority, the entire argument is a red herring; for, at no time prior to February 2016 did the Board or the State seek to suspend or revoke Cole's *probation*; nor was Cole's *probation* suspended or revoked prior to February 2016. And, without such a *probation* suspension or revocation, ECC continued to accrue via section 217.703, resulting in an ECC discharge date in February 2016.

Cole was placed on probation in 2013. Section 217.703 was enacted effective August 28, 2012.[8] It provided:

> 1. The division of probation and parole **shall** award earned compliance credits to any offender who is:
>
> (1) Not subject to lifetime supervision under sections 217.735 and 559.106 or otherwise found to be ineligible to earn credits by a court pursuant to subsection 2 of this section;
>
> (2) On probation, parole, or conditional release for an offense listed in chapter 195 or for a class C or D felony, excluding the offenses of aggravated stalking, sexual assault, deviate sexual assault, assault in the second degree under subdivision (2) of subsection 1 of section 565.060, sexual misconduct involving a

---

[8] Because Cole's ECC discharge date expired before subsequent 2018 amendments, some of which may have granted the sentencing court more discretion relating to ECC than it possessed under the pre-2018 version of section 217.703, we apply the statute as it existed prior to the 2018 amendments.

child, endangering the welfare of a child in the first degree under subdivision (2) of subsection 1 of section 568.045, incest, invasion of privacy, and abuse of a child;

(3) Supervised by the board; and

(4) In compliance with the conditions of supervision imposed by the sentencing court or board.

§ 217.703.1 (emphasis added). The award of ECC reduces the term of probation, "by thirty days for each full calendar month of compliance with the terms of supervision," with credits beginning to accrue for eligible offenders "after the first full calendar month of supervision." § 217.703.3. *See also State ex rel. Hillman v. Beger*, No. SC97171, No. SC97331, 2019 WL 581183, at \*2 (Mo. banc Feb. 13, 2019) ("Section 217.703 provides the ECC framework, which (stated generally) provides that for every full calendar month a probationer is in compliance with the terms of her supervision, the term of probation shall be reduced by 30 days."). "[M]onthly 'compliance' under the earned compliance credit statute is not defined as the strict fulfillment of each and every term of probation in a given month." *State ex rel. Parrott v. Martinez*, 496 S.W.3d 563, 569 (Mo. App. E.D. 2016). Instead, an offender is deemed in "compliance" when there is "the absence of an initial violation report submitted by a probation or parole officer *during a calendar month*, or a motion to revoke or motion to suspend filed by a prosecuting or circuit attorney, against the offender." § 217.703.4 (emphasis added). Section 217.703.5 itself provides that "the offender shall be deemed to be in compliance and shall begin earning credits on the first day of the next calendar month following the month in which the [violation] report was submitted or the motion to [to revoke] was filed," unless a hearing is held on the report or motion. Here, the relevant hearing on October 25, 2015, was *not* held for the purpose of discussing previous violation reports; instead, the sole purpose was to discuss debt collection for

8

court costs. Under this framework, then, Cole "shall" be awarded ECC for every month he met the statutory criteria.

At the October 28, 2015 hearing, a Board representative informed the sentencing court that Cole was eligible for ECC, and his ECC discharge date was February 2016, but he had a substantial amount of unpaid court costs. Cole admitted that he had not paid the entirety of the court costs and would be unable to do so prior to February 2016. Thus, the sentencing court re-classified Cole's "court costs" as "restitution" and announced on the record that he was *continuing Cole on probation* and *suspending ECC* until the "restitution" was paid in full.

However, the sentencing court's attempt to label "court costs" as "restitution" and suspend ECC simply was legally erroneous. First, section 559.105.1 only authorizes a court to order "restitution" for a *crime victim's losses* as a result of the subject criminal offense, *not* a county's unpaid court costs. § 559.105.1; *State ex rel. Bowman v. Inman*, 516 S.W.3d 367, 369 (Mo. banc 2017).[9] Second, the pre-2018 version of section 217.703.5 provides the only other statutory circumstances in which the accrual of ECC will *not* resume in the month following the filing of a violation report or a motion to revoke or suspend probation, to-wit:

> Credits shall not accrue during any calendar month in which a violation report has been submitted or a motion to revoke or motion to suspend has been filed, and shall be suspended pending the outcome of a hearing, if a hearing is held. If no hearing is held or the court or board finds that the violation did not occur, then the offender shall be deemed to be in compliance and shall begin earning credits on the first day of the next calendar month following the month in which the report was submitted or the motion was filed. All earned credits shall be rescinded if the court or board revokes the probation or parole or the court places the offender in a department program under subsection 4 of section 559.036. Earned credits shall

---

[9] Recently, our Supreme Court concluded that a failure to pay such court-ordered "restitution" *as contemplated by section 559.105.1* (*i.e.*, restitution to the victim of the crime) takes precedence over the application of ECC under section 217.703. *State ex rel. Hillman v. Beger*, No. SC97171, No. SC97331, 2019 WL 581183, at *6 (Mo. banc Feb. 13, 2019) ("A probationer may accrue ECCs under section 217.703.3, but she may not be discharged from probation by applying those ECCs to shorten her term of probation under section 217.703.7 unless and until she pays any court-ordered restitution in full pursuant to section 559.105.2."). Here, however, there is no Chapter 559 "restitution" to a "crime victim" that was ever ordered by the sentencing court and, hence, the prohibition language of section 559.105.2 is not applicable to the present case. *See also* n.4.

9

continue to be suspended for a period of time during which the court or board has suspended the term of probation, parole, or release, and shall begin to accrue on the first day of the next calendar month following the lifting of the suspension.

Here, simply put, none of these statutory events occurred prior to February 2016. Prior to February 2016, no hearing was ever sought for the purpose of addressing a probation violation report; instead, the hearing on October 28, 2015, was only scheduled for the purpose of discussing unpaid court costs. In fact, at one point the sentencing court even noted at the October 2015 hearing that, "these notices of citation [previous violation reports] have been filed *with no request that it be put on the docket, which is interesting, but it hasn't been . . . .*" (Emphasis added.) And, at no time did the State or Board seek to suspend or revoke Cole's probation prior to February 2016; nor was Cole's probation suspended or revoked prior to February 2016. Instead, the sentencing court expressly noted at the October 2015 hearing that Cole would be continued on probation.

The habeas court was correct to conclude that the sentencing court was without authority to suspend Cole's ECC by merely classifying "court costs" owed by Cole as "restitution." Cole's admission that he owed the costs and he thought it "fair" to classify them as "restitution" does not constitute an invitation of error to the sentencing court to assume that the result would be that Cole's ECC would be suspended. Instead, the colloquy at the October 2015 hearing was that the sentencing court was merely following the "invited error" *of the State and the Board*. For example, the following colloquy took place between the sentencing court and the prosecutor:

> COURT: Okay. We had a session last week at the Judicial College from Probation and Parole where they're telling at least as of that day what seemed to be the department's policy concerning costs and restitution and whether the Court should deny earned compliance credits and about, well, they're accruing, and we just don't apply it until they're ready for it, and so all that kind of stuff. So are— are you [the State and Board] representing that currently the department's policy is if I were to declare this as restitution, [the Board] would not apply the earned compliance credits and discharge him until that's paid?

10

PROSECUTOR: Right. We suspend it, because our view is it is restitution due to the county for costs of whatever.

COURT: Yeah.

PROSECUTOR: [The defendant] would still earn as long as there's no violations, but they don't get credit—

COURT: Right.

PROSECUTOR: —until it's all paid in full.

This colloquy demonstrates that the State and the Board invited the sentencing court to go along with their erroneous interpretation of sections 559.105.1 and 217.703.5. *Cole* did not invite the sentencing court's error, and the result is that no statutorily authorized suspension of ECC occurred at the October 2015 hearing.

Cole's probation began on April 29, 2013, and had an original expiration date of April 29, 2018. For eligible offenders,[10] ECC begin to accrue after the first full calendar month of supervision. § 217.703.3. ECC reduce the term of probation by thirty days for each full calendar month of compliance with the terms of supervision. Cole first accrued ECC between May 31, 2013, and June 30, 2013. The following is the application of ECC to Cole's original release date:

June 30, 2013 – original release date of April 29, 2018, moved to March 30, 2018, for ECC accrued May-June 2013

July 31, 2013 – release date moved to February 28, 2018, for ECC accrued June-July 2013

August 31, 2013 – release date moved to January 29, 2018, for ECC accrued July-August 2013

---

[10] The only circumstance in which a sentencing court has the discretion to find that an offender is ineligible to earn compliance credits is if the offender had been found guilty of certain specified crimes. § 217.703.2. However, the motion to find an offender ineligible to earn compliance credits must be made "prior to the first month in which the person may earn compliance credits under this section." § 217.703.2(9). Cole was not convicted of one of the specified offenses, and no motion that he was ineligible to earn ECC was filed in his case prior to the first month in which he could earn ECC. Consequently, Cole was eligible to earn ECC by operation of the version of section 217.703 in effect at the time.

September 30, 2013 – release date moved to December 30, 2017, for ECC accrued August-September 2013

October 31, 2013 – release date remained December 30, 2017; no ECC accrued September-October 2013 (Notice of Citation dated September 11, 2013, for failure to pay intervention fees and court costs)[11]

November 30, 2013 – release date moved to November 30, 2017, for ECC accrued October-November 2013

December 31, 2013 – release date moved to October 31, 2017, for ECC accrued November-December 2013

January 31, 2014 – release date moved to September 30, 2017, for ECC accrued December 2013-January 2014

February 28, 2014 – release date moved to August 31, 2017, for ECC accrued January-February 2014

March 31, 2014 – release date remained August 31, 2017; no ECC accrued February-March 2014 (Field Violation Report dated February 28, 2014, and filed March 4, 2014; Cole was arrested on January 17, 2014, for driving while revoked; the violation was discovered February 1, 2014; Field Violation Report states: "Cole has an earned discharge date of August 31, 2017.")

April 30, 2014 – release date moved to July 31, 2017, for ECC accrued March-April 2014

May 31, 2014 – release date moved to June 30, 2017, for ECC accrued April-May 2014

June 30, 2014 – release date moved to May 31, 2017, for ECC accrued May-June 2014

July 31, 2014 – release date moved to April 30, 2017, for ECC accrued June-July 2014

---

[11] After our ruling in this case was handed down on February 26, 2019, the Missouri Supreme Court, one week later, handed down its opinion in *State ex rel. Coleman v. Horn*, No. SC97198, 2019 WL 1030744 (Mo. banc Mar. 5, 2019). In the *Horn* opinion, when applying the same version of section 217.703 (pre-2018), the Supreme Court concluded that, "[t]he division's issuance of notices of citation [do] not stop the accrual of earned compliance credits (ECCs) pursuant to section 217.703." 2019 WL 1030744, at *1. Here, Cole received notices of citation, not field violation reports, referenced in four months of the ECC discharge date calculation in our ruling (October 2013, October 2014, April 2015, and May 2015). According to *Horn*, those months should *not* have temporarily ceased the accrual of ECCs and, as such, Cole's ECC discharge date was actually October 31, 2015, not February 29, 2016. This does not, however, impact our ruling in favor of Cole, refusing to disturb the habeas court's ruling below.

12

August 31, 2014 – release date moved to March 31, 2017, for ECC accrued July-August 2014

September 30, 2014 – release date moved to February 28, 2017, for ECC accrued August-September 2014

October 31, 2014 – release date remained February 28, 2017; no ECC accrued September-October 2014 (Notices of Citation filed October 1 and 29, 2014, for violations occurring on September 29, 2014, for failure to pay intervention fees and court costs)

November 30, 2014 – release date moved to January 30, 2017, for ECC accrued October-November 2014

December 31, 2014 – release date moved to December 31, 2016, for ECC accrued November-December 2014

January 31, 2015 – release date moved to November 30, 2016, for ECC accrued December 2014-January 2015

February 28, 2015 – release date moved to October 31, 2016, for ECC accrued January-February 2015

March 31, 2015 – release date moved to September 30, 2016, for ECC accrued February-March 2015

April 30, 2015 – release date remained September 30, 2016; no ECC accrued March-April 2015 (Notice of Citation filed April 2, 2015, for violations occurring on March 19, 2015, for failure to pay intervention fees and court costs)

May 31, 2015 – release date remained September 30, 2016; no ECC accrued April-May 2015 (Notice of Citation filed May 11, 2015, for violation occurring on March 18, 2015, for testing positive for alcohol)

June 30, 2015 – release date moved to August 31, 2016, for ECC accrued May-June 2015

July 31, 2015 – release date moved to July 31, 2016, for ECC accrued June-July 2015

August 31, 2015 – release date moved to June 30, 2016, for ECC accrued July-August 2015

September 30, 2015 – release date moved to May 31, 2016, for ECC accrued August-September 2015

13

October 31, 2015 – release date moved to April 30, 2016, for ECC accrued September-October 2015

November 30, 2015 – release date remained April 30, 2016, no ECC accrued October-November 2015 (Field Violation Report filed November 2, 2015, for violation occurring on October 23, 2015, when he was arrested on a failure to appear warrant; the Report stated that "[i]n regards to Case #12-CR00131, Cole has an Earned Discharge Date of 4/18/18.")

December 31, 2015 – release date should have been moved to March 31, 2016, for ECC accrued November-December 2015

January 31, 2016 – release date should have been moved to February 29, 2016, for ECC accrued December 2015-January 2016

February 29, 2016 – probation should have expired on ECC release date of February 29, 2016

Under section 559.036.8, a court's power to revoke probation only extends for the duration of the probationary term,

and for any further period which is reasonably necessary for the adjudication of matters arising before its expiration, provided that some affirmative manifestation of an intent to conduct a revocation hearing occurs prior to the expiration of the period and that every reasonable effort is made to notify the probationer and to conduct the hearing prior to the expiration of the period.

The conditions of this section were not satisfied in this case. The sentencing court did not affirmatively manifest its intention to revoke Cole's probation prior to February 29, 2016, nor did it make every reasonable or, for that matter, any effort to conduct a revocation hearing prior to February 29, 2016.

Under section 217.703.7, "the [B]oard or sentencing court **shall order final discharge** of the offender" when the combination of time served in custody, time served on probation, and ECC satisfy the total term of the offender's probation.[12]  (Emphasis added.)  The habeas court

---

[12] "No less than sixty days before the date of final discharge, the division shall notify the sentencing court, the board, and, for probation cases, the circuit or prosecuting attorney of the impending discharge."  § 217.703.10. This provision of the statute was satisfied when the Board representative informed the sentencing court during the October 28, 2015 hearing that Cole's ECC discharge date was "nearing on February the 1st of '16." The statute

14

did not err in concluding that section 217.703 does not grant the sentencing court authority to deny a probationer ECC when, as here, the section 559.036.8 conditions were not met. "Section 559.036 governs the duration of probation terms and the power of a court to revoke a defendant's probation." *State ex rel. Amorine v. Parker*, 490 S.W.3d 372, 375 (Mo. banc 2016) (internal quotation marks omitted). "'A term of probation commences on the day it is imposed.'" *Id.* (quoting § 559.036.1). "Throughout the duration of a defendant's probationary term, a court has the authority to revoke a term of probation if a defendant violates it." *Id.* (citing §§ 559.036.3, 559.036.5, & 559.036.8). "When the probation term ends, so does the court's authority to revoke probation." *Id.* (internal quotation marks omitted). The court lacked the authority to revoke Cole's probation on January 25, 2017, because his probation term ended on February 29, 2016.[13]

**Habeas Relief**

Second, the Attorney General argues that the habeas court acted beyond its authority when it granted habeas relief because challenges to the award or rescission of ECC are not cognizable in a habeas petition under Missouri law. The Attorney General refers to section 217.703.8, which states: "The award or rescission of any credits earned under this section shall not be subject to appeal or any motion for post-conviction relief." The Attorney General argues that because section 217.703.8 does not limit its prohibition to challenges in Rule 24.035 or Rule 29.15 motions, the legislature intended "any motion for post-conviction relief" to include a petition for writ of habeas corpus.

---

specifies that "[i]f the sentencing court, the board, or the circuit or prosecuting attorney upon receiving such notice does not take any action under subsection 5 of this section, the offender **shall be discharged** under subsection 7 of this section." *Id.* (emphasis added).

[13] Pursuant to the Supreme Court's more recent ruling in *State ex rel. Coleman v. Horn*, Cole's probation term ended on October 31, 2015. *See* n.11.

The Attorney General's argument is untenable. Section 217.703.8 cannot block the entry of habeas corpus relief because the General Assembly has no power to circumscribe such relief. Habeas corpus relief is a right secured by article 1, section 12, of the Bill of Rights of the Missouri Constitution, which provides "[t]hat the privilege of the writ of habeas corpus shall never be suspended." "Inasmuch as habeas corpus jurisdiction springs from the constitution, it may not be eliminated by statute or rule." *White v. State*, 779 S.W.2d 571, 573 (Mo. banc 1989). Habeas corpus relief is authorized by section 532.010 ("Every person committed, detained, confined or restrained of his liberty, within this state, for any criminal or supposed criminal matter, . . . may prosecute a writ of habeas corpus as herein provided, to inquire into the cause of such confinement or restraint."), and Rule 91.01(b)[14] ("Any person restrained of liberty within this state may petition for a writ of habeas corpus to inquire into the cause of such restraint."). Thus, the language in section 217.703.8 prohibiting review of ECC through "any motion for post-conviction relief" is limited to Rule 29.15 and Rule 24.035 motions. Accordingly, the habeas court had the authority to review Cole's claim regarding ECC.[15]

**Conclusion**

For the reasons stated above, we refuse to quash the record of the habeas court and order that the habeas court's judgment be enforced.

/s/ *Mark D. Pfeiffer*
Mark D. Pfeiffer, Presiding Judge

Thomas H. Newton and Anthony Rex Gabbert, Judges, concur.

---

[14] All rule references are to I MISSOURI COURT RULES—STATE 2018.
[15] Additionally, we note that section 217.703.8 is not implicated in the procedural scenario before us, as Cole's "claim does not present a challenge to the division [of probation and parole]'s calculation of an award or rescission of earned compliance credits, but instead posits that the circuit court did not apply the earned compliance credits appropriately awarded him by the division." *Ban v. State*, 554 S.W.3d 541, 546 (Mo. App. E.D. 2018).